**AID AUTO STORES, INC.,**
**Plaintiff-Appellant,**

v.

**Herbert S. CANNON and Cannon,**
**Jerold & Co., Inc.,**
**Defendants-Appellees.**

**No. 915, Docket 74–2697.**

United States Court of Appeals,
Second Circuit.

Argued May 29, 1975.

Decided July 23, 1975.

Clendon H. Lee, New York City (Douglas I. Milan, Rogers Hoge & Hills, New York City, of counsel), for plaintiff-appellant.

Harry E. Youtt, New York City (Thal & Youtt, New York City, of counsel), for defendants-appellees.

Before CLARK, Associate Justice,* and HAYS and MANSFIELD, Circuit Judges.

PER CURIAM:

Aid Auto Stores, Inc. ("Aid" herein) brought suit in the Southern District of New York against Herbert S. Cannon, Cannon, Jerold & Co., Inc., and others, charging them with participation with certain fiduciaries of Aid in breach of their fiduciary duty to it, all allegedly in violation of various provisions of the federal securities laws and common law principles. At the close of the plaintiff's case Judge Cooper directed a verdict in favor of defendants Cannon and Cannon, Jerold & Co., and later awarded attorney's fees and costs to these defendants. Upon this appeal by Aid the principal issues are whether the evidence established a prima facie case and, if not, whether the trial judge abused his discretion in awarding attorney's fees and costs to these defendants pursuant to § 11(e) of the Securities Act of 1933, 15 U.S.C. § 77k(e).[1] We affirm the judgment of dismissal but reverse the award of attorney's fees.

The action arises out of a loss suffered by Aid as the result of its purchase in April 1973 of a six-month Certificate of Deposit ("CD" herein) for $100,000 in the Atlantic & Pacific Bank & Trust Co. of Nassau, Bahamas ("A & P Bank" herein)

---

* Supreme Court of the United States, retired, sitting by designation.

1. Aid also contends that the district court erred in denying its motion to strike the defendants' jury demand. However, it understandably does not brief or argue this point, which is frivolous. The action being one for damages, the defendants had a right to a jury trial. In any event, since we find that the court properly directed a verdict in favor of the defendants, the issue becomes moot.

upon the recommendation and assurances of Aid's financial advisor, the firm of Rittmaster, Lawrence & Co., Inc. ("RLC" herein), one member of which, Arthur Rittmaster, was an Aid director. Rittmaster did not disclose to Aid that RLC had received a $1,500 commission from the A & P Bank for obtaining the deposit and that the bank had also made unsecured loans of $125,000 each to Rittmaster and to his business associate, Lee Lawrence. When Aid was unsuccessful in retiring the CD and the A & P Bank thereafter went out of business, Aid sued various defendants, including Rittmaster, Lawrence, RLC, Cannon, and Cannon, Jerold & Co. ` Rittmaster and Lawrence settled by confessing judgment in the sum of $25,000 each.

Aid's claims against Cannon and Cannon, Jerold & Co., as set forth in its complaint, are (1) that Cannon and others had participated in the sale of an unregistered security, i. e., the CD, in violation of § 12(1) of the Securities Act of 1933, 15 U.S.C. § 77*l*(1); (2) that Cannon had participated in the sale of the CD through use of misleading statements or omissions in violation of § 12(2) of the 1933 Act and § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 77*l*(2) & 78j(b), by failing to disclose that the A & P Bank was virtually insolvent; and (3) that Cannon had intentionally procured Rittmaster and Lawrence to breach their fiduciary duty to Aid. In the absence of diversity of citizenship between Aid and Cannon, Jerold & Co., the court's jurisdiction over the last claim was presumably invoked on the theory of pendency.

The evidence introduced at trial, viewed most favorably to the plaintiff, reveals that Aid's President, Murray Klein, had been induced by Rittmaster and RLC to purchase the $100,000 CD in the A & P Bank and had made the purchase directly from the bank's president, one Mori Aaron Schweitzer, also named as a defendant. Klein had not had any dealings with Cannon, nor had Cannon's name been mentioned to or by Klein in connection with Aid's purchase of the CD. The case against Cannon consisted principally of Cannon's deposition and a few exhibits. This proof showed that Cannon had assisted in the organization of the A & P Bank by loaning it $100,000 for the purchase of a charter, which was repaid to him by the bank's president, Schweitzer, prior to the plaintiff's purchase of the CD. Cannon had also visited the bank, looked briefly at its books and had an unexercised option for the purchase of 50% of the bank's stock. He therefore hoped that the bank would be successful. Cannon had met on several occasions with Rittmaster and Lawrence, discussing business and investment information with them. He had also received from the bank two checks for the unsecured loans of $25,000 each to Rittmaster and Lawrence, which he forwarded to them with knowledge that the checks represented loans by the bank to them. Also Cannon had discussed with Rittmaster the prospective purchase by Aid of the CD before the purchase was consummated and he had generally followed the negotiations. There was no proof of any involvement on the part of Cannon, Jerold & Co., the claim against it apparently having been predicated on the theory that it was Cannon's alter ego or the entity on behalf of which he acted in dealing with the bank and with Rittmaster and Lawrence.

The foregoing proof with respect to Cannon, although it might lead to speculation and suspicion as to his involvement in the breach of fiduciary duty committed by Rittmaster and Lawrence, fails, even when viewed most favorably to ̇Aid, to provide an adequate basis for an inference of knowing participation by Cannon in Aid's purchase of the CD, much less in any fraudulent inducement of that purchase. There was no evidence that Cannon knew of Rittmaster's fiduciary relationship to Aid or that, assuming Cannon was aware of that relationship, he knew or had reason to believe that Rittmaster was breaching it. There was no proof that Cannon suspected or knew of any connection between Aid's purchase of the CD and the

bank's loan of $25,000 apiece to Rittmaster and Lawrence or that, assuming such a connection, Rittmaster had not disclosed all relevant facts to Aid.

Absent some evidence that Cannon had knowledge of Rittmaster's breach of trust, no jury could reasonably find Cannon liable on this record for the conduct of RLC, Rittmaster and Lawrence. There could be "but one reasonable conclusion," *Brady v. Southern Railway Co.,* 320 U.S. 476, 479, 64 S.Ct. 232, 88 L.Ed. 239 (1943); see *Baker v. Texas & Pac. Railway Co.,* 359 U.S. 227, 79 S.Ct. 664, 3 L.Ed.2d 756 (1959); *Diapulse Corp. v. Birtcher Corp.,* 362 F.2d 736, 743 (2d Cir.), *cert. dismissed,* 385 U.S. 801, 87 S.Ct. 9, 17 L.Ed.2d 48 (1966), and that was a verdict in favor of Cannon.

■ The deficiency in Aid's case is further evidenced by the failure to introduce evidence that the CD in the A & P Bank was a security for which no registration had been filed, which is an essential element of Aid's first two claims. See *SEC v. Continental Tobacco Co. of South Carolina,* 463 F.2d 137, 155 (5th Cir. 1972); III Loss, Securities Regulation 1693 (2d ed. 1961). There was no proof, furthermore, that Cannon was a "person who sold" the CD within the meaning of § 12(2) of the 1933 Act, or a person "controlling" the bank as issuer. Although Cannon was interested in the success of the bank, had had business relations with it, and was the holder of an unexercised option for the purchase of 50% of the stock, this evidence could not, in the absence of further proof, give him the necessary power over its management and policies to constitute him a "controlling person." Nor was there any showing that the bank, at the time of the alleged misrepresentations regarding insolvency, was in fact "virtually insolvent." Proof that it later had its license revoked and went out of business would not establish its financial condition at the time of the alleged fraudulent representation. In short, the evidence was plainly insufficient to show that Cannon or Cannon, Jerold & Co. had violated any federal securities laws, that they had

participated in any of the alleged wrongs or that they had induced RLC, Rittmaster, or Lawrence to breach their fiduciary duties to Aid.

■■ There remains the question of whether Judge Cooper abused his discretion in awarding $8,480 attorney's fees to the defendants Cannon and Cannon, Jerold & Co. Section 11(e) of the 1933 Act, 15 U.S.C. § 77k(e), authorizes the court to award attorney's fees and costs if "the court believes the suit or the defense to have been without merit." We have interpreted this latter standard to require a finding that the claim borders on the frivolous or has been brought in bad faith. *Klein v. Shields & Co.,* 470 F.2d 1344, 1347 (2d Cir. 1972); *Katz v. Amos Treat & Co.,* 411 F.2d 1046, 1056 (2d Cir. 1969); *Stadia Oil & Uranium Co. v. Wheelis,* 251 F.2d 269, 277 (10th Cir. 1957). Mere failure of a party to present sufficient evidence to support its claims will not in itself warrant a determination of frivolity. See, e. g., *Colonial Realty Corp. v. Brunswick Corp.,* 337 F.Supp. 546, 553 (S.D.N.Y. 1971); *Johns Hopkins University v. Hutton,* 297 F.Supp. 1165, 1234–35 (D.Md. 1968), *revd. on other grounds,* 422 F.2d 1124 (4th Cir. 1970), *cert. denied,* 416 U.S. 916, 94 S.Ct. 1622, 1623, 40 L.Ed.2d 118 (1974).

A review of the record in this case persuades us that, while the direction of a verdict for the defendants was proper, there nevertheless was sufficient evidence to show that Aid had good cause to institute the suit against Cannon. Cannon had served as a conduit for the undisclosed $25,000 loan checks from the A & P Bank to Rittmaster and to Lawrence. He had discussed with Rittmaster and Lawrence negotiation of the Aid purchase of the CD in the bank. He also held an option for the purchase of 50% of the bank's stock. In short, although the evidence adduced at trial was plainly insufficient to submit the case to the jury, there were grounds for suspecting Cannon's complicity, which entitled Aid to institute the action with a view to

discovering sufficient proof to enable it to prove its charges at the time of trial.

Accordingly we reverse the district court's award of attorney's fees to Cannon and Cannon, Jerold & Co. In all other respects the judgment of the district court is affirmed.