**WESTERN FEDERAL CORPORATION, an Arizona corporation, and James Guaclides, Plaintiffs,**

v.

**Gregory DAVIS and Kathe Davis, husband and wife, Gila Mines Corporation, a Nevada corporation, Einar C. Erickson and Jane Doe Erickson, husband and wife, Defendants.**

**No. CIV 81–99 PHX CLH.**

United States District Court, D. Arizona.

Dec. 23, 1982.

George H. Mitchell, Phoenix, Ariz., for plaintiffs.

James J. Farley, Scottsdale, Ariz., for defendants Davis.

Susan R. Bolton, Phoenix, Ariz., for defendants Erickson.

## MEMORANDUM OPINION AND ORDER

HARDY, District Judge.

Summary judgment was granted in favor of plaintiffs on Counts I and V of their complaint. The plaintiff lodged a proposed form of judgment with the Court and the defendants objected to it. The objection was sustained. Plaintiffs then filed a motion for a hearing on the form of judgment and a motion to vacate the order sustaining the objection of the original form of judgment.

The form of judgment proposed by plaintiffs would (1) award judgment in favor of the plaintiff Guaclides against the defendants in the sum of $80,000 together with interest at the rate of 14.25% per annum

from January 31, 1980; (2) order that the certain promissory note in the sum of $160,000 made payable to the Defendant Erickson be returned to the plaintiff Guaclides and that it be cancelled; (3) ordered that a development agreement between Erickson and Guaclides and a mining contract between Gila Mines Corporation and Guaclides be rescinded and cancelled; (4) award judgment in favor of the plaintiff Western Federal Corporation against the defendants in the sum of $80,000 together with interest at the rate of 14.25% per annum from April 17, 1980; (5) order that the certain promissory note in the sum of $160,000 made payable to the Defendant Erickson be returned to plaintiff Western Federal Corporation and that it be cancelled; (6) ordered that a development agreement between Erickson and Western Federal Corporation and a mining contract between Gila Mines Corporation and Western Federal Corporation be rescinded and cancelled; and (7) award attorney's fees in the sum of $49,677. The proposed form of judgment also contains the language of Rule 54(b), Federal Rules of Civil Procedure, so that the judgment could be entered as a final judgment.

Four issues have been raised by the parties: (1) what amounts are to be repaid to plaintiffs, (2) whether plaintiffs are entitled to prejudgment interest and, if so, what rate of prejudgment interest should be imposed, (3) whether plaintiffs are entitled to attorney's fees, and (4) what amount of attorney's fees, if any, should be awarded.

### 1. *Amount to be Repaid to Plaintiffs*

■ Both sides agree that Section 12 of the 1933 Securities Act, 15 U.S.C. § 77*l*, largely governs each of the elements of the judgment to be ordered by the Court:

> "Any person who (1) offers or sells a security in violation of Section 5 ... shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the considera-

tion paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."

The defendants argue that the awards of $80,000 to each of the defendants are excessive because the plaintiffs seek rescission rather than damages and therefore the judgment should restore them to their *status quo ante*. The defendants contend that the plaintiffs claimed tax deductions by reason of their investments and that these tax benefits should be considered in determining what amount is necessary to return plaintiffs to their position prior to the transaction.

While the statute mentions only "income" as a credit against the amount paid, courts have held that economic benefits such as tax deductions must be taken into account in determining what must be restored. *Austin v. Loftsgaarden,* 675 F.2d 168, 181–83 (8th Cir.1982). *See also Dupuy v. Dupuy,* 551 F.2d 1005 (5th Cir.), *cert. denied,* 434 U.S. 911, 98 S.Ct. 312, 54 L.Ed.2d 197 (1977); *Smith v. Bader,* 83 F.R.D. 437 (S.D. N.Y.1979); *Bridgen v. Scott,* 456 F.Supp. 1048 (S.D.Tex.1978).

While this Court has *considered* the economic benefits to the plaintiffs from their investments with the defendants, as required by *Austin,* it concludes that the defendants should not be given any credit. Upon restoration through rescission of the funds which they invested, the plaintiffs will have to amend their income tax returns to report those funds as income under the tax benefit rule. *Mertens Law of Federal Income Tax* § 7.37. The amounts claimed as a deduction and the amounts later reported as income will wash out and the net tax benefit will be nothing. In this case, the economic benefit by way of a tax deduction,[1] therefore, is illusory.

■ The plaintiffs, however, will have realized another economic benefit from

---

1. The Court adopts the plaintiffs' statement of fact that the plaintiffs Western Federal and Guaclides received tax deductions which, at a

marginal rate of 52%, have a value of $33,280 and $41,600 respectively.

their investments and that is that they have had the use of the money that would have been paid as taxes had the investments and tax deductions not taken place. Specifically, the defendants gained the use of money that otherwise would have been paid as taxes for a period of two years.[2] However, the Court concludes that the defendants should not be given credit for the plaintiffs' use of the money.

Rescission is an equitable remedy to return parties to their prior positions and to work fairness to them. It was not the defendants who gave the tax benefits to the plaintiffs. It was the Government. If the defendants were to be given a credit for the value of the use of the money, that credit would reduce the amount of income that the Government would recapture under the tax benefit rule. In effect, the reduction in the amount that the defendants would have to return would only be at the Government's expense.

The equities of this case do not run in the defendants' favor; they are guilty of violating the securities laws. Therefore, it would be improper to let them benefit in the form of a judgment at the expense of the Government. The most equitable solution to this problem of tax benefits as a credit is to not consider them at all. By requiring the defendants to repay the entire amounts invested, the following would occur: the defendants would be forced to give up everything that they had received, the plaintiffs would recover everything they had paid, and the Government would be able to recapture all of the investment as income that had been deducted by the plaintiffs.

2. *Entitlement to Prejudgment Interest*

Section 12 of the 1933 Securities Act, 15 U.S.C. § 77*l*, permits this Court to award interest on the consideration rescind-ed. Whether interest will be awarded is a question of fairness, lying within the Court's sound discretion, to be answered by a balancing of equities. *Wessel v. Buhler,* 437 F.2d 279, 284 (9th Cir.1971). In light of the fact that the defendants violated the securities laws and that the plaintiffs have been deprived of the full use of the amounts paid, plaintiffs are entitled to recover prejudgment interest.

The plaintiffs suggest that the proper rate of interest is 14.25%. This rate is the average rate that a consumer could have obtained in the money market during the two year period in question.

This Court recognizes that it may award interest at the money market rate in an effort to compensate the plaintiffs for the loss of the use of their money. *See Johns Hopkins University v. Hutton,* 297 F.Supp. 1165, 1228 (D.C.Md.1968), *affirmed in part, reversed in part,* 422 F.2d 1124 (4th Cir. 1970), *cert. denied,* 416 U.S. 916, 94 S.Ct. 1622, 40 L.Ed.2d 118 (1974). Although other statutes prescribe a legal rate of interest, Section 12 of the Securities Act of 1933 does not and, accordingly, it has been ruled that the rate of interest imposed should "compensate fairly the defrauded purchaser for the loss of the use of his money." *Id. See also Collier v. Granger,* 258 F.Supp. 717 (S.D.N.Y.1966).

As indicated by the discussion above concerning the amount to be returned, the plaintiffs were not deprived of the full use of their money. Each plaintiff obtained the use of money that otherwise would have been paid in taxes. Consequently, the Court will lower the rate of interest to account for this limited use of the amounts paid.[3] Plaintiffs Western Federal and Guaclides are entitled to prejudgment interest rates of 11.5% and 10.75% per annum respectively.

---

2. The Court adopts the plaintiffs' statement of fact that the value of the use of the money is $9,484 and $12,006 to plaintiffs Western Federal and Guaclides respectively. After taxes, the value to plaintiffs Western Federal and Guaclides is $4,552 and $5,460 respectively.

3. The limited use of the money had a value of $4,552 and $5,460 to Western Federal and Guaclides respectively. See note 2. These net amounts represent interest rates of approximately 2.75% and 3.5% on $80,000 over a period of two years.

### 3. Entitlement to Attorney's Fees

■ Section 11(e) of the 1933 Securities Act, 15 U.S.C. § 77k(e) provides:

"... In any suit under this or any other section of this subchapter the Court may, in its discretion, require an undertaking for the payment of the costs of such suit, including reasonable attorney's fees, and if judgment shall be rendered against a party litigant such costs may be assessed in favor of such party litigant ... if the court believes the suit or the defense to have been without merit."

This provision has been interpreted to mean that a court may award attorney's fees only upon a finding that the defenses posed by the defendant were without merit or "bordering on the frivolous." *See e.g. Aid Auto Stores v. Cannon*, 525 F.2d 468, 471 (2d Cir.1975). Mere failure of a party to present sufficient evidence to support its claims will not in itself warrant a determination of frivolity. *Id.; Johns Hopkins University v. Hutton, supra.*

■ The Court is wary of this standard for awarding attorney's fees under the Securities Act of 1933, yet it still finds that the defense was without merit. Summary judgment was awarded in plaintiffs' favor because there was no issue of fact. The only issues of law were the defenses of whether there was involved in this investment transaction a "security" or a "sale" under the Securities Act of 1933. These defenses, however, were not well taken and, in the opinion of the Court, were without any merit.

### 4. Amount of Attorney's Fees

■ As in this case where attorney's fees are to be awarded, it is incumbent upon the plaintiffs to provide the Court with information to enable it to fix reasonable attorney's fees. In this regard, however, plaintiffs not only have failed to do so, but they appear to be guilty of serious overreaching.

One of the factors which the Court should consider in fixing a reasonable attorney's fee is the amount of time spent by the attorneys in the case. *Kerr v. Screen Extras Guild*, 526 F.2d 67 (9th Cir.1975). The plaintiffs have submitted a computer printout of the legal time recorded for one of the law firms representing the plaintiffs. The defendants have pointed out that there is a companion case pending in the Superior Court of Arizona and that the time recorded on the computer printout includes time involved in both courts. A perusal of the printout convinces this Court that the contention of the defendants is correct. Plaintiffs have not informed the Court of the time they have spent on the case pending before this Court.

It should also be noted that the computer printout appears to include time recorded by paralegals. The Court was given no information as to the value of such time. The Court was informed that the time billed by associate attorneys was valued from $50 to $85 per hour. However, there is no information as to the value of specific times billed by different associates.

Accordingly, the Court can give very little credit to the amount of time claimed by plaintiffs for attorney's fees and must rely upon those other factors set forth in the Code of Professional Responsibility which are to be considered as guides in determining the reasonableness of legal fees. *Id.* at 70. Such factors include the nature of the attorney-client relationship, the complexities of the case, the fee arrangement and the Court's recognition that there has been some considerable portion of time devoted to the case pending in this court. Having considered these factors as argued in the parties' memoranda, the Court will award $20,000 as attorney's fees.

### 5. Other Issues

Since the proposed form of judgment contained Rule 54(b) language, the judgment should also list the issues which remain to be tried. If there are no other issues, the remaining counts should be dismissed.

IT IS ORDERED that plaintiffs prepare and submit to the Court a form of judgment consistent with this opinion.