William FRESCHI, Jr., as Trustee of
William Freschi Trust, Plaintiff,

v.

GRAND COAL VENTURE, Bandler &
Kass, Ground Production Corporation,
William J. Werner, Jack Mitnick, Rob-
ert Sylvor, William C. Sherr, Mineral
Resources Development, Inc., and H.
Jean Baker, Defendants.

No. 81 Civ. 4331 (RWS).

United States District Court,
S.D. New York.

July 10, 1984.

Layton & Sherman, New York City, Bowker, Elmes, Perkins, Mecsas & Gerrard, Boston, Mass., for plaintiff; Thomas L. Abrams, New York City, Robert C. Gerrard, Edward N. Perry, Elizabeth A. Zeldin, Boston, Mass., of counsel.

Schwarzfeld, Ganfer & Shore, New York City, for defendants; Neal Schwarzfeld, New York City, of counsel.

Esterman & Esterman, P.C., New York City, for defendant William C. Sherr; Philip Esterman, New York City, of counsel.

## OPINION

SWEET, District Judge.

By order of June 28, 1984, this court granted defendants' motion to set aside the judgment and for a new trial, and stated that plaintiff William Freschi, Jr., as Trustee of the William Freschi Trust ("Freschi"), would be offered a remittitur in a forthcoming opinion. This is that opinion. This opinion also denies Freschi's motion for costs with respect to the disqualification motion, but grants Freschi the costs of this action.

On the eve of Memorial Day weekend, the jury awarded Freschi $440,000 against defendants Bandler & Kass ("Bandler & Kass"), William C. Sherr, Robert Sylvor and William J. Werner for legal malpractice and $926,346.07 against all defendants for liability under Rule 10b–5 and state-law fraud. The jury also awarded Freschi "all expenses incurred both in this action and before the tax courts, plus interest due the IRS on any deficiencies, including all plaintiff's attorneys fees," even though the spe-

cial verdict form had not posed questions on these topics.

## Rule 10b–5 and Fraud Liability

Defendants contend that the trial evidence was insufficient to support the jury's verdict for Freschi on the fraud and Rule 10b–5 counts. They also contend that the jury's verdict denying defendants' statute of limitations defense to the Rule 10b–5 claim was against the weight of the evidence. Defendants have not contended that the jury was improperly instructed on these questions.

 To summarize the evidence adduced at this two-week trial would serve little purpose for those who participated in it. There was sufficient evidence to support a conclusion that the defendants failed to disclose certain material facts to Freschi, especially the fact that Joseph Laird was involved with the offering and had been served with a restraining order. The facts adduced at trial do not require as a matter of law the conclusion that Freschi should have suspected the fraud before July 13, 1978, the crucial date for statute of limitations purposes. Accordingly, defendants' motion to set aside the jury's finding of liability on the Rule 10b–5 and fraud counts is denied.

## Damages for Fraud and Rule 10b–5

The jury awarded Freschi $926,346.07 for Rule 10b–5 and fraud liability. This award exactly equals the amount of cash Freschi invested plus the extra tax Freschi owed because of the Internal Revenue Service's ("IRS") initial disallowance of Freschi's deductions for 1977 and 1978. It thus appears likely that the jury awarded Freschi benefit-of-the-bargain damages, contrary to the court's instructions. The jury's extensive note on the verdict form was also not based on any instructions given. Whatever the reason for the award, however, it was excessive for the reasons set forth below and must be set aside.

 As the jury was instructed, the Securities Exchange Act of 1934 limits recovery to "actual damages." 15 U.S.C. § 78bb(a). The statute does not define this term, and its application to complex fact patterns has raised difficult questions. Our Court of Appeals has explained that the purpose of § 78bb(a) is "to compensate civil plaintiffs for economic loss suffered as a result of wrongs committed in violation of the 1934 Act . . . ." *Osofsky v. Zipf,* 645 F.2d 107, 111 (2d Cir.1981). The Court has held that, absent special circumstances that are not present in the instant case, *see Osofsky,* 645 F.2d at 111–14, the actual damages of a defrauded purchaser are his out-of-pocket losses—*i.e.,* the difference between the price he paid and the value of what he received." *Levine v. Seilon, Inc.,* 439 F.2d 328, 334 (2d Cir.1971). In addition, a Rule 10b–5 plaintiff may recover consequential damages if he can "establish the causal nexus with a good deal of certainty." *Zeller v. Bogue Electric Manufacturing Corp.,* 476 F.2d 795, 803 (2d Cir.), *cert. denied,* 414 U.S. 908, 94 S.Ct. 217, 38 L.Ed.2d 146 (1973).

 The parties agree that Freschi's $266,500 investment qualifies as part of his out-of-pocket damages. Freschi contends that he should also be awarded the $659,-846.07 of extra taxes he had to pay when the IRS disallowed the deductions he took for the Grand Coal investment on his 1977 and 1978 taxes. An award of Freschi's damages for the tax deductions he had been promised, however, would constitute a benefit-of-the-bargain damage measure, which, as the jury was instructed, is not permissible in these circumstances. *Osofsky, supra; Levine, supra; see also Sharp v. Coopers & Lybrand,* 649 F.2d 175, 190–91 & n. 22 (3d Cir.1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982).

Defendants contend that the tax benefits Freschi received from his investment in Grand Coal should be deducted from the award for cash invested. The IRS permitted Freschi to take a $266,500 ordinary income deduction for the cash invested on his 1977 return. Defendants have calculated Freschi's combined state and federal tax rate for 1977 at 70.8%, and conclude that

Freschi saved $188,682 (which is 70.8% of $266,500) on his 1977 return because of the deduction, leaving him an after-tax out-of-pocket expense for the investment of $77,818.

Courts have split in determining whether a plaintiff's tax savings resulting from an investment in a tax shelter that has been held to have been fraudulently promoted should be deducted from his damage award. This court held in *Smith v. Bader*, 83 F.R.D. 437 (S.D.N.Y.1979), that Rule 10b–5 plaintiffs' tax returns were a proper subject of discovery. The courts in *Austin v. Loftsgaarden*, 675 F.2d 168, 183 (8th Cir.1982), and *Bridgen v. Scott*, 456 F.Supp. 1048, 1061–62 (S.D.Tex.1978), held that tax deductions should be considered in determining a Rule 10b–5 plaintiff's damages. However, the recent decision in *Burgess v. Premier Corp.*, 727 F.2d 826, 837–38 (9th Cir.1984), which neither side brought to the court's attention during the trial, comes to the opposite conclusion. *See also Western Federal Corp. v. Davis*, 553 F.Supp. 818 (D.Ariz.1982). The question is now pending decision before this Circuit's Court of Appeals in *Salcer v. Envicon Equities Corp.*, Nos. 84–7185, 84–7187, 84–7189 and 84–7191. In an *amicus curiae* brief in *Salcer*, the Securities and Exchange Commission has urged that plaintiffs' tax savings not be offset.

■ The court holds that a plaintiff's tax savings should not be deducted from his award for cash invested. When a plaintiff has his investment returned to him in a damage award, the tax laws result in the disallowance of the deductions he took on the investment, eliminating much or all of the tax benefits. *See Burgess*, 727 F.2d at 838. Were this effect to be ignored and the tax benefits deducted, the losers would be the government and plaintiffs, and the only winner would be defendants. The rule that most closely approximates actual damages is one that does not deduct plaintiffs' tax savings.

■ Freschi also contends that he should receive an award for the interest penalty of approximately $264,500 assessed by the IRS after its disallowance of Freschi's 1977 and 1978 deductions for Grand Coal. Such a penalty is assessed to compensate for the fact that the taxpayer, in paying his taxes late, had the use of the tax money from the time it should have been paid until the time it was paid. In this case, Freschi had the use of $337,033.06 from April 15, 1978 until April 15, 1982 and $322,813.01 from April 15, 1979 until April 15, 1984. Assuming an interest rate of 8%, the value of the use of these sums for these periods approximately equals the interest penalty. Accordingly, Freschi has failed to meet the heavy burden a Rule 10b–5 plaintiff faces in attempting to prove consequential damages, *see Zeller, supra,* and an award for the interest penalty is impermissible. *See Baumel v. Rosen*, 412 F.2d 571, 576 (4th Cir.1969) (interest on sum paid to defrauded seller deducted from award), *cert. denied*, 396 U.S. 1037, 90 S.Ct. 688, 24 L.Ed.2d 681 (1970); *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 384 F.Supp. 507, 526 (S.D.N.Y.1974), (denial of consequential damage award for interest charge on debt incurred for carrying investment), *aff'd in relevant part*, 516 F.2d 172, 191–92 (2d Cir.1975), *rev'd on other grounds*, 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977).

■ For these reasons, Freschi's maximum permissible damages under Rule 10b–5 are $266,500. As with those for Rule 10b–5, damages for fraud in New York are measured only by actual pecuniary loss, *Aigen v. Dimin*, 86 A.D.2d 896, 447 N.Y.S.2d 530 (2d Dep't 1982), and the maximum permissible award for fraud would also have been $266,500.00. The jury's award for Rule 10b–5 and fraud of $926,346.07 was thus excessive and must be set aside.

### Legal Malpractice

■ Damages for legal malpractice in New York are limited to the value of what was lost as a proximate result of the malpractice. *Spector v. Mermelstein*, 485 F.2d 474, 480 (2d Cir.1973); *Titsworth v. Mondo*, 95 Misc.2d 233, 407 N.Y.S.2d 793,

799 (Sup.Ct. 1978). As was shown above, if Freschi receives a damage award of $266,500, he will have been fully compensated for what he lost as a result of defendants' malpractice. For this reason, the jury's award of $440,000 for legal malpractice was excessive and must be set aside in its entirety.

In addition, no evidence was presented to satisfy the "but for" test, which, as the jury was instructed, is an essential element of a legal malpractice action in New York, regardless of whether the malpractice was of the customary sort or was a breach of fiduciary duty deriving from the attorney's failure to disclose facts he knew about the investment. *See Spector v. Mermelstein*, 361 F.Supp. 30, 39–40 (S.D.N.Y.1972), *aff'd*, 485 F.2d 474; *Parker, Chapin, Flattau & Klimpl v. Daelen Corp.*, 59 A.D.2d 375, 399 N.Y.S.2d 222, 224 (1st Dep't 1977).

### Remittitur and Prejudgment Interest

The jury's verdict having been set aside, Freschi will be offered a remittitur of $266,500 plus prejudgment interest, as calculated below.

"An award of prejudgment interest in a case involving violations of the federal securities laws rests within the equitable discretion of the district court to be exercised according to considerations of fairness." *Chris-Craft, supra*, 516 F.2d at 191. Such an award should compensate a plaintiff for the lost use of his money. *Id.* N.Y.Civ.Prac.L. § 5001(a), which controls the award of prejudgment interest on the state-law fraud claim, *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 692 n. 13 (2d Cir.1983), provides for prejudgment interest for acts, including fraud, that deprive a plaintiff of possession or enjoyment of property, including money. Interest is awarded under § 5001(b) from the date the damages were incurred.

The two courts that have held that tax benefits should not be subtracted from a Rule 10b–5 damage award held that the tax benefits could be subtracted from damages in the calculation of prejudgment interest. *See Burgess*, 727 F.2d at 838; *Western Federal*, 553 F.Supp. at 821. The Securities and Exchange Commission advocated this approach in its *amicus* brief in *Salcer*. Brief at 16. Under this approach, the court would consider the $266,500 deduction Freschi took on his 1977 return. Assuming an effective tax rate of 70.8%, the deduction saved Freschi $188,682 in taxes, and, as a result, Freschi has been deprived of only $77,818 since April 15, 1978. Under this view, Freschi would be awarded prejudgment interest on only this amount.

However, such a view would consider the tax consequences for the purposes of prejudgment interest and deny such consideration with respect to the main award. If tax treatment is not to be considered on the main award, as discussed above, no principled reason is apparent to differentiate the result with respect to prejudgment interest. In short, the tax consequences of the award will be left to the taxing authorities. Therefore, if Freschi accepts the remittitur, prejudgment interest will be calculated on the entire $266,500 at the rate provided in N.Y.Civ.Prac.L. § 5004.

If Freschi accepts the remittitur of $266,500, the parties will submit proposed judgments regarding the amount of prejudgment interest that will be added to his award in accordance with the holding above. If Freschi does not accept the award, the matter will be set down for trial in September.

Freschi's motion for costs incurred opposing defendants' motion to disqualify his law firm lacks merit because of *Bottaro v. Hatton Associates*, 680 F.2d 895, 897 (2d Cir.1982), which indicates that a motion by Freschi to disqualify Schwarzfeld, Ganfer & Shore would not have succeeded, and on the ground that Neal Schwarzfeld's "of counsel" position with Bandler & Kass was published in Martindale-Hubbell and thus Freschi was able to make such a motion before trial.

However, costs and disbursements of this action are awarded to the plaintiff.

**IT IS SO ORDERED.**