596 F.Supp. 592 (1984)
SCHEVE, Donald P., Scheve, Deanna, Plaintiffs,
v.
CLARK, Paul K., Dickherber, George J., Dickherber, Francis R., J.K.R. Enterprises, Diversified Business Services, Defendants.
No. 83-567C(5).
United States District Court, E.D. Missouri.
July 30, 1984.
*593 Arthur L. Smith, Christine M. Kazanas, St. Louis, Mo., for plaintiffs.
Michael B. Stern, Margaret Zonia Morrison, Clayton, Mo., for defendants.

MEMORANDUM OPINION
LIMBAUGH, District Judge.
This is a suit to recover for the sale of three securities to the plaintiffs in violation of the registration, prospectus and antifraud provisions of the federal and state securities laws. The plaintiffs also seek to recover for common law fraud in connection with the sale of one of the securities. Judgment will be entered in favor of the plaintiffs.
The plaintiffs in this case are Donald P. and Deanna Scheve. They are husband and wife, and residents of St. Louis County, Missouri.
Donald Scheve is and was in 1981 and 1982 employed as vice president of Burgoyne Electrical Sales, Inc., a corporation that employed defendant Diversified Business Services, Inc. to do its accounting work in 1981 and 1982. In 1982 Diversified Business Services, Inc. arranged for the preparation of plaintiffs' 1981 income tax returns.
*594 The defendants are Paul Clark, George Dickherber, Francis Dickherber, J.K.R. Enterprises, and Diversified Business Services, Inc. Paul Clark, George Dickherber, and Francis Dickherber are residents of Missouri. J.K.R. Enterprises is a Missouri partnership in which Paul Clark, George Dickherber and Francis Dickherber are the sole equal partners. Diversified Business Services, Inc. is a Missouri corporation of which defendants Paul Clark, George Dickherber and Francis Dickherber are the principal officers, directors and stockholders. Besides their interlocking managements, defendants J.K.R. Enterprises and Diversified Business Services, Inc. share the same business office, telephone number and support staff.
In 1981 and the early part of 1982, Paul Clark, George Dickherber and Francis Dickherber were promoting the sales of working interests in Show Petroleum gas and oil wells to the accounting clients of Diversified Business Services, Inc. As a result of these marketing efforts by the defendants, including several invitations by Paul Clark to Don Scheve to attend promotional sales meetings, the plaintiffs first became aware of Show Petroleum, Inc.
In early March, 1982, Mr. Scheve had a conversation with defendant Paul Clark in the offices of Diversified Business Services, Inc. and J.K.R. Enterprises concerning Show Petroleum. During the conversation, and in other conversations in person and on the telephone during the week preceding March 9, 1982, Clark offered for sale to Mr. Scheve a 2.34375 percent working interest in Show Petroleum, Inc's R.L. Cantwell # 3 Well for a price of $9,600.00. On March 9, 1982, Donald Scheve delivered a check for $9,600.00 to Paul Clark at the offices of J.K.R. Enterprises and Diversified Business Services, Inc. in consideration for a 2.34375 percent working interest in the R.L. Cantwell # 3 Well. The check was transmitted to Show Petroleum by employees of J.K.R. Enterprises and Diversified. J.K.R. Enterprises was compensated by Show Petroleum, Inc. for services performed in connection with the sale. After delivery of the check, Paul Clark handed Mr. Scheve a promotional paperweight in which the names of Show Petroleum, Inc. and J.K.R. Enterprises, along with the address and telephone number of Diversified Business Services, Inc. and J.K.R. Enterprises, were encased.
During the week preceding April 9, 1982, Mr. Scheve had several conversations in person and on the telephone with Paul Clark. During these conversations, Clark offered for sale to Mr. Scheve a 2.34375 percent working interest in Show Petroleum's Hames C-4 Well at a price of an additional $9,600.00. Clark also represented to Mr. Scheve during these conversations that current investors in the Hames C-4 Well were being paid $275.00 a month from their investments. In fact, investors in Hames C-4 were not being paid $275.00 a month and Clark knew that they were not when he made the representation to Mr. Scheve.
As a result of these conversations and the misrepresentation of Paul Clark, on April 9, 1982, Donald Scheve delivered a check for $9,600.00 to Paul Clark at the offices of J.K.R. Enterprises and Diversified in consideration for a 2.34375 percent working interest in the Hames C-4 Well. The check was transmitted to Show Petroleum by employees of J.K.R. Enterprises and Diversified. J.K.R. Enterprises was compensated by Show Petroleum, Inc. for services performed in connection with this sale.
On or about March 23, 1982 and April 26, 1982 plaintiff received letters of agreement in the mail for the interests in R.L. Cantwell # 3 and Hames C-4, respectively, from Show Petroleum. At no time did the plaintiffs ever receive a prospectus concerning either of these interests. The letters of agreement represented plaintiffs' only contact with Show Petroleum, Inc., other than through defendants, until sometime in May, 1982.
On about May 15, 1982, Mr. Scheve, at the invitation of Paul Clark, attended a meeting at the offices of J.K.R. Enterprises and Diversified conducted by Paul Clark, *595 George Dickherber and Francis Dickherber. The meeting was attended by about 40 investors. At the meeting, the defendants informed the investors that Show Petroleum was in financial trouble and needed additional capital. The defendants proposed that the investors form an investment partnership for the purpose of providing Show Petroleum with the needed capital. Several days after the meeting, Clark contacted Mr. Scheve by telephone and offered him an interest in an investment partnership, to be known as The St. Louis Connection, for any increment of $1,000.00. On about May 25, 1982, Mr. Scheve delivered a check for $5,000.00 to Paul Clark at the offices of J.K.R. Enterprises and Diversified for the purchase of an interest in The St. Louis Connection, and executed an agreement evidencing the purchase. A copy of the agreement was mailed to Mr. Scheve on about June 30, 1982, by defendants. The agreement states that the specific purpose of The St. Louis Connection shall be "to make various investments by purchasing various investment interests or the making of various loans for investment purposes." At no time did Mr. Scheve receive a prospectus concerning his interest in The St. Louis Connection.
No registration statement was ever filed with the Securities and Exchange Commission for the working interests in the Show Petroleum wells or the interest in The St. Louis Connection which the plaintiffs purchased. Nor were the investments registered with the State of Missouri. The defendants have not alleged that the working interests or the interest in The St. Louis Connection were exempt from registration with the Securities and Exchange Commission or the State of Missouri, or that the sales of the interests to plaintiffs were exempted transactions under the Securities Act of 1933 or the Missouri Uniform Securities Act.
J.K.R. Enterprises was paid $200,987.90 by Show Petroleum, $50,777.12 of which represented credit on a loan by Show Petroleum to J.K.R. Of the $200,987.90 paid to J.K.R., $1,599.94 was attributable to the plaintiffs' investments. The $1,599.94 represented approximately 7% of the plaintiffs' total investment of $24,200.
The plaintiffs tendered their interests in the Cantwell # 3 and Hames C-4 wells and The St. Louis Connection to defendants. The defendants rejected the tender. Show Petroleum is now bankrupt and therefore is not a party.
The working interests in the R.L. Cantwell # 3 and Hames C-4 Wells were securities. 15 U.S.C. § 77b(1); § 409.401(l), R.S.Mo.1978. The interest in The St. Louis Connection was a security for two reasons. First, the Scheves' purchase of the interest was, in effect, a further investment in working interests in oil and gas wells, interests which are securities. Second, the Scheves' interest in The Connection was an investment contract, which is "an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975). See also S.E.C. v. W.J. Howey, Inc., 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946). Any profits were to be derived from the efforts of others, for financial success depended on Show's ability to develop profitable wells and management of The Connection was vested in an Executive Committee composed of Clark and the Dickherbers.
None of these securities were exempt from registration under Federal or Missouri securities laws, nor were the offers and sales of the securities exempted transactions. The securities were not registered and not accompanied by any prospectus. The offers and sales of the three securities were therefore in violation of federal and state law. 15 U.S.C. § 77e (requiring registration and prospectus); § 409.301, R.S.Mo.1978 (requiring registration).
The activities of defendant Clark were a substantial factor in and materially aided in the sale of the three securities to *596 the plaintiffs. Clark is therefore liable to the plaintiffs. 15 U.S.C. § 77l(1); § 409.411(a), (b), R.S.Mo.Cum.Supp.1983; S.E.C. v. Murphy, 626 F.2d 633, 650 (9th Cir. 1980).
The activities of defendants George and Francis Dickherber were a substantial factor in and materially aided in the sale of the interest in The St. Louis Connection. The Dickherbers, along with Clark, are therefore jointly and severally liable to the plaintiffs with respect to The St. Louis Connection. Id.
Furthermore, Clark was an agent of the Dickherbers and was acting within the scope of his actual or apparent authority in connection with the sales of all three securities. The Dickherbers, along with Clark, are jointly and severally liable to the plaintiffs for all three sales under agency principles and statutory law. 15 U.S.C. § 77o; § 409.411(b), R.S.Mo.Cum.Supp.1983. Clark and the Dickherbers were agents of J.K.R. Enterprises and Diversified Business Services, Inc., and acted within the scope of their actual or apparent authority. J.K.R. and Diversified are also liable to the plaintiffs under agency principles and statutory law. Id.
The misrepresentation of Clark concerning the Hames C-4 Well was material, was made with scienter, was reasonably relied on by the plaintiffs, and induced them to purchase the Hames C-4 security to their detriment. Clark is liable to the plaintiffs under statutory law and common law for the misrepresentation. 15 U.S.C. § 77l(2); § 409.411(a), R.S.Mo.Cum.Supp. 1983; Weaver v. Travers, 631 S.W.2d 81 (Mo.App.1982). The other four defendants are jointly and severally liable with Clark for the misrepresentation under agency principles and statutory law.
The plaintiffs may recover the consideration paid ($24,200.00), less income received ($1,715.21), which produces a figure of $22,484.79. No punitive damages will be allowed. The plaintiffs may recover reasonable attorneys' fees and may file a motion itemizing their fees. No hearing on fees will be held unless requested by the defendants.
The plaintiffs also may recover prejudgment interest. On the federal claims, the appropriate rate is that which will adequately compensate the plaintiffs for the loss of the use of their money. The rate here will be 12%, which the plaintiffs could have obtained through their money market fund. See Western Federal Corporation v. Davis, 553 F.Supp. 818, 821 (D.Ariz. 1982); Johns Hopkins University v. Hutton, 297 F.Supp. 1165, 1229 (D.Md.1968). The rate on the state statutory claims is 8%. § 409.411(a), R.S.Mo.Cum.Supp.1983. The total interest allowable through February 9, 1984 is $5,363.68, with an additional $7.96 per day to the date of judgment.
The foregoing constitutes findings of fact and conclusions of law pursuant to F.R.Civ.P. 52. In evaluating the testimony, exhibits and other evidence, the Court has considered the parties' objections and given the materials such weight as they deserve. Judgment will be entered in favor of the plaintiffs.