739 F.2d 1439
 Fed. Sec. L. Rep. P 91,611
WESTERN FEDERAL CORPORATION, an Arizona corporation, and
James Guaclides, Plaintiffs-Appellees,
v.
Einar C. ERICKSON and Georgia Erickson, husband and wife, Defendants,
and
Gregory Davis and Kathy Davis, husband and wife; and Gila
Mines Corporation, a Nevada corporation,
Defendants-Appellants.
 No. 83-2302.
 United States Court of Appeals,
Ninth Circuit.
 Submitted April 11, 1984.*
Decided Aug. 10, 1984.
 
 William K. Whissen, Paul Tutnick, Phoenix, Ariz., for plaintiffs-appellees.
 Brent E. Leavitt, Leavitt, Graves & Leavitt, Las Vegas, Nev., James J. Farley, Susan R. Bolton, Kenneth C. Sundlof, Jr., Shimmel, Hill, Bishop & Gruender, Phoenix, Ariz., for defendants-appellants.
 Appeal from the United States District Court for the District of Arizona.
 Before SNEED and FLETCHER, Circuit Judges, and QUACKENBUSH,** District Judge.
 SNEED, Circuit Judge:
 
 
 1
 Promoters of a silver mining venture suffered a summary judgment entered by the district court on the ground that the sale of interests in the venture violated the registration requirements of the Securities Act of 1933. The district court ordered the promoters of the venture to provide restitution and awarded attorney's fees to the plaintiff-purchasers. The promoters, other than Einar Erickson, appeal. We affirm.
 
 I.
 FACTS
 
 2
 Einar Erickson, a geologist, and Gregory Davis, an accountant, were the promoters of a silver mining venture called the "Gila Canyon Project." Investors could purchase a "unit" in the Project for $240,000, payable in $80,000 cash and the remainder by a promissory note. Erickson was to stake out and record mining claims in the Gila Canyon area of Nevada, and then assign these claims to the investors. After Erickson developed the silver mines, defendant Gila Mines Corporation (GMC) was to assume their operation. Davis is the president, chairman, and principal shareholder of GMC. Sixty-six investors acquired full or partial units in the Project; defendants received approximately $3 million in cash and $5.6 million in notes receivable. Each investor executed a promissory note and a "development agreement" with Erickson. Investors also individually entered into "mining contracts" with GMC.
 
 
 3
 This lawsuit arises from a falling out among business associates. Davis was a shareholder in, and did accounting work for, plaintiff Western Federal Corporation (WFC), a precious metals broker. John Etz, the president and second largest shareholder in WFC, solicited investors for the Gila Canyon Project. Plaintiff James Guaclides is the chairman and principal shareholder of WFC. In December 1979, Davis met with clients of WFC at WFC's offices and discussed the Project. Subsequently, Guaclides and WFC each purchased one unit in the Project. In August 1980, after silver production in the Project failed to reach projected levels, Erickson and Davis agreed to terminate Erickson's involvement in the Project and to substitute GMC. The investors were not parties to this agreement.
 
 
 4
 Guaclides maintains that he first learned of difficulties with the Project in the summer of 1980. In November 1980, he met with Erickson, who provided him with various information about the Project. Erickson told Guaclides that he had paid Davis more than $400,000 for services in connection with the Project. In December 1980, Guaclides demanded rescission of the purchase agreements for himself and WFC and refund of the initial cash investment. Defendants did not comply with this demand, and Guaclides filed suit in federal district court seeking relief under the federal securities laws.
 
 
 5
 On February 23, 1983, the district court awarded summary judgment against the defendants. The court found that the sale of interests in the Project violated the registration requirements of section 5 of the Securities Act of 1933, 15 U.S.C. Sec. 77e (1982). Plaintiffs were also entitled to relief, the court held, under sections 15 and 29(b) of the Securities Exchange Act of 1934, 15 U.S.C. Secs. 78o, 78cc(b) (1982). The district court ordered the repayment of the initial cash investment plus prejudgment interest and awarded attorney's fees for $20,000. The order determining damages and awarding fees is published at 553 F.Supp. 818 (D.Ariz.1981). The court also ordered the cancellation of the promissory notes, the "development contracts," and the "mining contracts."II.
 
 DISCUSSION
 
 6
 Appellants raise three issues on appeal: (1) whether the district court erred in granting summary judgment for violations of the securities laws, (2) whether the district court erred by not reducing the judgment by the amount of tax benefits received by the appellees, and (3) whether the district court abused its discretion in awarding attorney's fees to the appellees under 15 U.S.C. Sec. 77k(e). We affirm on each issue.
 
 A. Summary Judgment on the Section 5 Claim
 
 7
 Section 5 of the 1933 Act, 15 U.S.C. Sec. 77e (1982), forbids the offer or sale of unregistered securities in interstate commerce. Appellants do not challenge the district court's finding that appellees stated a prima facie case for violation of section 5. Instead, appellants raise an affirmative defense that the relevant transactions were exempt from the registration requirements as a private offering under section 4(2) of the Act, 15 U.S.C. Sec. 77d(2) (1982). Appellants admit that the offering did not qualify for the "safe harbor" provided by Rule 146.[1]
 
 
 8
 Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to prevail as a matter of law. See Fed.R.Civ.P. 56(c). Once the movant has met the initial burden of showing that his motion is properly supported, the adverse party must come forward with specific facts showing that there remains a genuine factual issue for trial. See Fed.R.Civ.P. 56(e). The opponent may not rest on his pleadings; instead, he must offer "significantly probative" evidence as to any fact claimed to be disputed. E.g., SEC v. Murphy, 626 F.2d 633, 640 (9th Cir.1980).
 
 
 9
 Our analysis of the propriety of the grant of summary judgment must commence with the flexible test we have endorsed for determining if the private offering exemption under section 4(2) is available. This test considers: (1) the number of offerees, (2) the sophistication of the offerees, (3) the size and the manner of the offering, and (4) the relationship of the offerees to the issuer. See Murphy, 626 F.2d at 644-45. The party claiming the exemption must show that it is met not only with respect to each purchaser, but also with respect to each offeree. Id. at 645. The first and fourth factors noted above established that the district court properly awarded summary judgment.[2]
 
 
 10
 The number of offerees was too uncertain. To claim the private offering exemption, evidence of the exact number and identity of all offerees must be produced. See, e.g., SEC v. Continental Tobacco Co. of South Carolina, 463 F.2d 137, 161 (5th Cir.1972). Appellants could not do this. They note that Davis asserted in an affidavit that the offerees were recorded through the use of numbered offering memoranda and that the total number of offerees was ninety-one. This number is not firm, however, because appellants steadfastly refused to identify the offerees. Appellees introduced the affidavit of Charles Jones, who purchased a fractional interest in a "unit" through John Etz. Jones stated that he had never completed an offeree questionaire, but that he had traveled to Nevada with Etz and Davis to examine the mine site. Once appellees presented evidence that no control was placed on the number of offerees, it became incumbent on appellants to rebut that evidence. See Murphy, 626 F.2d at 645. Appellants did not meet this burden; they did not introduce significantly probative evidence concerning the number and identity of the offerees.[3] Cf. Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir.1979) (conclusory statements in single affidavit did not satisfy burden of significantly probative evidence), cert. denied, 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980).
 
 
 11
 Turning to the fourth factor of the Murphy test, the relationship of the offerees to the issuer, the appellants fare no better. The exemption from the registration requirements allowed by section 4(2) applies only where the offerees do not need the protection of the Securities Act. See SEC v. Ralston Purina Co., 346 U.S. 119, 125, 73 S.Ct. 981, 984, 97 L.Ed. 1494 (1953); Murphy, 626 F.2d at 644. Lack of need exists only if all of the offerees have available the sort of information about the issuer that registration reveals. See, e.g., Murphy, 626 F.2d at 647. Such information is "available" only if it is in fact disclosed or if the offerees have effective access to it. Doran v. Petroleum Management Corp., 545 F.2d 893, 903 (5th Cir.1977); cf. McDaniel v. Compania Minera Mar de Cortes, 528 F.Supp. 152, 164 (D.Ariz.1981) (failure to produce evidence that all offerees had access to or disclosure of information was fatal to private offering exemption).
 
 
 12
 Appellants argue that the offering memorandum contains all the information required by Schedule A of the Securities Act, 15 U.S.C. Sec. 77aa (1982). This is not true. The offering memorandum omits important information about GMC and Davis.[4] This deficiency cannot be eliminated by arguing that no corporation was an "issuer" of the Project "units" and therefore Schedule A information concerning GMC was not required. GMC was crucial to the organization and success of the Project, and was an "issuer" for purposes of the private offering exemption. See Murphy, 626 F.2d at 642-44; see also SEC v. Holschuh, 694 F.2d 130, 138-39 (7th Cir.1982) (corporate entity that was key to success of limited partnerships was "issuer").
 
 
 13
 It follows that the information actually disclosed was inadequate. The remaining question thus becomes whether the offerees, by virtue of their relationship to the issuer, had access to the information that registration would reveal. The conclusory statement in Davis' affidavit that all offerees had free access to information or that it was there for the asking will not defeat a motion for summary judgment. "[W]hen the issuer relies on 'access' absent actual disclosure, he must show that the offerees occupied a privileged position relative to the issuer that afforded them an opportunity for effective access to the information registration would otherwise provide." Doran, 545 F.2d at 906 (footnote omitted). That is, there must be "a relationship based on factors such as employment, family, or economic bargaining power that enables the offeree effectively to obtain such information." Id. at 903; cf. SEC Rule 146(e), 17 C.F.R. Sec. 280.146(e) (1982) (similar requirement for Rule 146 safe harbor). Offeree questionaires submitted by appellants show that the requisite relationships did not exist with respect to all of the offerees. We need not consider claims under other sections of the Act.[5]B. The District Court's Refusal to Reduce the Judgment by the Amount of Tax Benefits
 
 
 14
 Appellants argue that the district court erred by refusing to reduce the judgment by the amount of tax benefits appellees realized from their investment in the Project. Our recent decision in Burgess v. Premier Corp., 727 F.2d 826, 837-38 (9th Cir.1984), refused to deduct tax benefits in a securities case, and specifically endorsed the reasoning of the district court in this case. The appellants' argument is without merit.
 
 
 15
 C. The Award of Attorney's Fees Under Section 11(e)
 
 
 16
 Section 11(e) of the 1933 Act allows fee awards at the discretion of the trial court if it "believes the suit or defense to have been without merit." 15 U.S.C. Sec. 77k(e) (1982). Fees, it has been said, may be awarded under section 11(e) only if the claim or defense borders on the frivolous or is brought in bad faith. See, e.g., Aid Auto Stores, Inc. v. Cannon, 525 F.2d 468, 471 (2d Cir.1975); cf. Weil v. Investment/Indicators, Research & Management, Inc., 647 F.2d 18, 22 (9th Cir.1981) (same standard for determining whether to require undertaking under section 11(e)). The district court, although "wary" of the foregoing standard, concluded that a fee award was appropriate.
 
 
 17
 Appellants argue that the district court ignored their section 4(2) defense which they insist was well founded. This is not so. Appellants relied on their section 4(2) defense in memoranda filed with the district court opposing the fee award and again relied on this defense in a motion to reconsider. Although the order awarding fees does not refer explicitly to the section 4(2) defense, see 553 F.Supp. at 822, appellants' assertion that the district court overlooked this defense is implausible.
 
 
 18
 Appellants also rely on Nemeroff v. Abelson, 620 F.2d 339, 348 (2d Cir.1980), and insist that a fee award is proper under section 11(e) only if there is "clear evidence" that a claim is entirely without color and made for reasons of harassment and delay. The language appellants rely on refers to awards based on bad faith.[6] Nemeroff acknowledges that fees may be awarded under section 11(e) if a defense is without merit. See id. at 349. The "without merit" standard, as noted supra, encompasses claims and defenses that either are brought in bad faith or border on the frivolous.
 
 
 19
 The district court acted within its discretion in awarding fees. The defenses asserted by appellants did border on the frivolous. The fact that appellants successfully opposed a motion for summary judgment under state securities law in a parallel state proceeding does not preclude an award of fees in this case. The parties shall bear their own costs, including attorney's fees, on appeal.
 
 
 20
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to 28 U.S.C.A. 9th Cir.R. 3(a) and Fed.R.App.P. 34(a)
 
 
 **
 Honorable Justin L. Quackenbush, United States District Judge for the Eastern District of Washington, sitting by designation
 
 
 [1]
 17 C.F.R. Sec. 230.146 (1982). Rule 146 provided a "safe harbor" for offerings that satisfied various conditions sufficient to invoke the Sec. 4(2) exemption. Failure to satisfy the conditions of Rule 146 did not raise a presumption that the private offering exemption was unavailable. In 1982, the Securities and Exchange Commission replaced Rule 146 with Rule 506, part of "Regulation D." See SEC Release No. 33-6389, 47 Fed.Reg. 11251 (1982). Rule 146 continues to apply to offerings, like the Gila Canyon Project, that commenced before April 15, 1982. See id
 
 
 [2]
 The fact that appellants successfully opposed a motion for summary judgment on state securities law claims in parallel state proceedings does not preclude summary judgment on the federal securities law claims. Cf. Daniels v. McKay Machine Co., 607 F.2d 771, 773-74 (7th Cir.1979) (refusing to treat state court denial of summary judgment as binding after case removed to federal court)
 
 
 [3]
 By requiring the party claiming the private offering defense to present significantly probative evidence concerning the number and identity of offerees in order to avoid summary judgment, our holding furthers the policy of the Federal Rules of Civil Procedure favoring full pretrial disclosure of evidence and penalizing its withholding. See Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 482-83 (1984)
 
 
 [4]
 Schedule A requires the disclosure of financial information concerning an issuer. It also requires, inter alia, disclosure of the officers and directors of the issuer and their remuneration, and identification of persons owning more than 10% of any class of stock of the issuer. See 15 U.S.C. Sec. 77aa (1982). The offering memorandum does not contain this information for GMC or Davis
 
 
 [5]
 Because we affirm the summary judgment on the Sec. 5 claim, we do not reach the issue whether the district court properly awarded summary judgment against appellants under Secs. 15(a) and 29(b) of the Securities Exchange Act of 1934. We previously have held that there is no implied private cause of action for violations of Sec. 15. See SEC v. Seaboard Corp., 677 F.2d 1301, 1313-14 (9th Cir.1982). Section 29(b), however, provides that any contract made in violation of any provision of the 1934 Act shall be void. An innocent party may sue under Sec. 29(b) to rescind a contract, subject to such equitable defenses as waiver and estoppel. Royal Air Properties, Inc. v. Smith, 312 F.2d 210, 213 (9th Cir.1962). The Fifth Circuit has recognized such an action for a plaintiff complaining of a Sec. 15 violation. See Regional Properties, Inc. v. Financial & Real Estate Consulting Co., 678 F.2d 552 (5th Cir.1982). See generally Gruenbaum & Steinberg, Section 29(b) of the Securities Exchange Act of 1934: A Viable Remedy Awakened, 48 Geo.Wash.L.Rev. 1 (1979) (discussing Sec. 29(b) remedy for violations of provisions of 1934 Act that do not create implied action for damages)
 
 
 [6]
 Nemeroff also considered the availability of fee awards to defendants under Sec. 9(e) of the 1934 Act, 15 U.S.C. Sec. 78i(e) (1982), and held that defendants may not recover fees under that provision unless an action was frivolous and without foundation. 620 F.2d at 350