**Bruce M. HALL, Plaintiff-Appellee,**

v.

**Clifford M. JOHNSTON and Percy E. Goodwin, Defendants-Appellants.**

**Nos. 84–3518, 84–3756.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1984.

Decided April 16, 1985.

John F. McGrory, Jr., Bruce MacGregor Hall, P.C., Portland, Or., Richard D. Wasserman, Salem, Or., for plaintiff-appellee.

Michael J. Lilly, Portland, Or., for defendants-appellants.

Before SKOPIL, FARRIS and BEEZER, Circuit Judges.

SKOPIL, Circuit Judge:

Johnston and Goodwin appeal the district court's grant of partial summary judgment in this diversity action brought under ORS § 59.115, which creates civil liability for violations of Oregon securities law. They contend that the court erred in not permitting them to assert equitable defenses and by refusing to deduct tax benefits from the award. Johnston also appeals the district court's grant of default judgment. We affirm.

BACKGROUND

In 1980 plaintiff Hall, an Oregon resident attorney, sought to invest $1.2 million to reduce his income tax liability. He met Johnston and Goodwin, both Washington residents, in Portland, Oregon to discuss investment possibilities. As a result of this and later meetings, Hall invested $170,000 in a limited partnership interest in Chinook Operations, Ltd. ("Chinook"), a Washington limited partnership. Hall also paid John-

ston and Goodwin an additional $30,000 in commissions. Johnston and Goodwin were not registered as broker/dealers, securities salesmen, or investment advisors in the state of Oregon. Chinook was also not registered under Oregon securities law.

Hall informed appellants that he desired to liquidate his interest in Chinook by mid-summer of 1981. When he attempted to do so, however, Johnston and Goodwin told him that Chinook would be liquidated some-time in late 1981 or early 1982. Hall was also told that the value of his interest in Chinook in August 1981 was close to his original investment amount. When Chinook was liquidated in the spring of 1982, Hall received approximately $63,600 as his share. Hall thereafter filed this action in district court seeking, **inter alia,** rescission and restitution. The district court granted Hall's motion for summary judgment on the issue of liability, holding that the defendants sold unregistered securities within the state of Oregon in violation of Oregon securities law. The district court also held that Hall's tax benefits would not be taken into account in computing his damages under ORS § 59.115. Judgment was entered for Hall in the amount of $136,-398.30 plus interest.

Shortly after the court granted partial summary judgment, Hall filed a notice of deposition for the purpose of deposing defendant Johnston. When Johnston failed to appear, Hall filed a motion for default judgment pursuant to Fed.R.Civ.P. 37(d). The district court denied Hall's default motion upon the express condition that defendant Johnston comply with further deposition notices. Thereafter, Johnston failed to appear at a second duly-noticed deposition. The district court granted Hall's renewed default motion against defendant Johnston. This appeal followed.

## DISCUSSION

Defendants argue on appeal that the district court: (1) incorrectly ruled that equitable defenses are not available under ORS § 59.115; (2) incorrectly held that tax bene-

fits are not deducted from a damage recovery under ORS § 59.115; and (3) abused its discretion by entering a default judgment against defendant Johnston for his failure to attend two properly noticed depositions.

1. **Equitable Defenses Under ORS § 59.-115.**

Whether the district court erred by granting Hall's motion for partial summary judgment as to liability under ORS § 59.-115 is reviewed **de novo.** *Lojek v. Thomas,* 716 F.2d 675, 677 (9th Cir.1983); *see also In re McLinn,* 739 F.2d 1395, 1397 (9th Cir.1984) (*en banc* ) (questions of state law are reviewable under the same independent **de novo** standard as are questions of federal law).

Appellants assert that Hall purchased the securities from them with actual or constructive knowledge that the securities were unregistered. They contend that this fact should enable them to assert the equitable defenses of estoppel, laches, waiver, **in pari delicto,** ratification, and unclean hands to Hall's action for rescission and restitution under ORS § 59.115. Oregon state courts have not confronted this issue.[1] Appellants argue that these defenses. would prevent unscrupulous investors from getting a "free ride" by knowingly purchasing unregistered securities and using the civil liability provision of the registration statute as insurance against a bad investment. Appellants further argue that the Oregon Blue Sky laws were designed to protect the innocent and unsophisticated purchaser and that appellee, a sophisticated tax attorney, does not fall within the class of people the law was designed to protect. While it is conceivable that a knowledgeable and unscrupulous investor could use the protections of the Oregon securities registration requirement to his or her advantage, appellants misapprehend the statute's clear language and purpose.

ORS § 59.115 states that "(1) Any person who (a) Offers or sells a security in violation of Oregon Securities Law ... is liable

---

1. The district court invited the parties to certify the state law questions to the Oregon Supreme Court pursuant to ORS § 28.200 which took

effect at approximately the same time as this action. One of the parties declined and the district court chose not to certify.

... to the person buying the security from him." This statutory language is neither unclear nor inconsistent with other sections of the securities statute. *See Carlson v. C.I.R.*, 712 F.2d 1314, 1315 (9th Cir.1983). Furthermore, the legislative history of the Oregon Blue Sky laws supports a strict reading of the registration requirement. During 1967 legislative review of the Oregon securities statute, the House Judiciary Committee considered but rejected the idea of adopting the Uniform Securities Act. They found that the "Oregon law [is] more restrictive in protecting the public than the Uniform Act [and that we have] more safeguards under Oregon law." House Judiciary Committee Minutes, p. 6 (February 27, 1967). The legislature retained its existing securities registration requirement while simplifying the registration process. House Judiciary Committee Minutes, p. 2 (February 24, 1967). We believe the Oregon legislature intended a restrictive interpretation of the registration requirement.

The state of Oregon has an independent interest in requiring disclosure of information that it deems necessary to help purchasers make informed investment decisions. Spencer, *Private Placement of Securities in Oregon: The Legal Framework*, 53 Or.L.Rev. 131, 133 (1974); *accord S.E.C. v. Murphy*, 626 F.2d 633, 642 (9th Cir.1980) (*quoting S.E.C. v. Ralston Purina Co.*, 346 U.S. 119, 124, 73 S.Ct. 981, 984, 97 L.Ed. 1494 (1953)) (federal law). This interest is met by requiring registration of securities, and by excluding from the state those securities that do not satisfy the statutory standards. Spencer, *supra; see also* Bayse, *A Glimpse of Oregon's Blue Sky Legislation: The Revision of 1967*, 47 Or. L.Rev. 403, 403 (1968). This interest is wholly separate from the interest of the purchaser in seeing that registration requirements are met. Implying equitable defenses runs counter to Oregon's interest in regulating the information available to prospective securities purchasers in Oregon.

Appellants argue that equitable defenses can be asserted against disappointed purchasers in Rule 10b–5 actions and should

therefore apply here. Rule 10b–5 deals with federal securities fraud, however, and not with securities registration. The state's interest in enforcing securities registration requirements is distinct from its interest in enforcing antifraud provisions. Unlike securities fraud provisions, registration provisions do not require a showing of materially deceitful acts or omissions as a prerequisite to a finding of liability. *Compare* 15 U.S.C. § 78j; 17 C.F.R. § 24.10b–5 (1984) *and* ORS § 59.135 (federal and state securities fraud provisions) *with* 15 U.S.C. § 77e *and* ORS § 59.055 (federal and state securities registration provisions). The state's interest in enforcing securities registration through civil liability is served by strictly requiring sellers to comply with that requirement rather than by scrutinizing the seller's and purchaser's respective conduct.

Finally, appellants claim that *Bergquist v. International Realty Ltd.*, 272 Or. 416, 537 P.2d 553 (1975) supports their contention that they may assert the equitable defense of unclean hands in this case. We do not agree. *Bergquist* merely held that

> [one] who secures a listing for the sale of [an unregistered security] and receives a commission on the sale thereby putting the whole scheme in motion, cannot thereafter be heard to complain and demand damages [under ORS § 59.115] from one or more of his fellow cohorts.

*Id.* at 433, 537 P.2d 553. Hall's hands, if "unclean" at all, are insufficiently dirty to bring his conduct within the very narrow holding of *Bergquist*.

After reviewing the clear language of the statute and the state's independent interest in requiring registration of securities, we hold that where a seller of unregistered securities alleges that the purchaser had actual or constructive knowledge that the securities were unregistered, equitable defenses are not available in an action by the purchaser under ORS § 59.115.

**2. Deduction of Tax Benefits.**

Whether tax benefits should be deducted from any damage recovery under ORS

§ 59.115 is a question of state law reviewable under the same independent **de novo** standard as are questions of federal law. *In re McLinn*, 739 F.2d at 1397. Appellants claim that Hall received tax benefits from his investment in Chinook, which would be a windfall if he were also allowed to receive full damages for rescission of his securities investment. Oregon courts have not addressed this issue.[2] We, however, have refused to deduct tax benefits in securities cases. *Western Federal Corp. v. Erickson*, 739 F.2d 1439, 1444 (9th Cir. 1984) (citing *Burgess v. Premier Corp.*, 727 F.2d 826, 837–38 (9th Cir.1984) ). In *Burgess*, a securities fraud case, this court stated:

> [T]o simply subtract the tax benefits from damages would place an unfair burden on taxpayers generally.... Such a result leaves the government bearing the cost of defendants' fraud. A better result is to set damages equal to the [plaintiff's] losses exclusive of tax benefit. The [plaintiff] will not receive a double benefit from this measure of damages because under the tax benefit rule, [his] prior tax benefits will be disallowed.

*Burgess*, 727 F.2d at 838.

■ The rule in *Burgess* and *Western Federal* is equally applicable here. Hall will be required to report the amount of any damages recovered from appellants in the year of its receipt. 1 J. Merten, *The Law of Federal Income Taxation* § 7.34 (1981); *see Hillsboro National Bank v. Commissioner of Internal Revenue*, 460 U.S. 370, 377–91, 103 S.Ct. 1134, 1140–48, 75 L.Ed.2d 130 (1983). Hall will not receive any windfall if he is awarded full damages without deducting his tax benefits. We conclude that an Oregon court would not deduct a tax benefit from damage recovery under ORS § 59.115. The district court's damage calculation will not be disturbed.

3. **Default Judgment.**

■ Appellant Johnston argues that the district court erred by entering a default judgment after he failed to appear at two properly noticed depositions. We review the district court's grant of default for abuse of discretion. *Rainbow Pioneer No. 44–18–04A v. Hawaii-Nevada Investment Corp.*, 711 F.2d 902, 905 (9th Cir.1983).

Under Fed.R.Civ.P. 37(b)(2)(C), a party who fails to attend a properly noticed deposition may be sanctioned by default judgment. Johnston twice failed to appear. After Johnston's first failure, the district court denied appellee's motion for a default judgment. Following a detailed discussion of Rule 37 and the sanction of dismissal, the district court concluded that Hall's motion for dismissal should be denied upon the express condition that defendant Johnston comply with further deposition notices. The court then granted Hall leave to renew his motion for sanctions should Johnston fail to comply in the future.

Thereafter, appellee's attorney requested dates Johnston would be available for a deposition. After negotiations, the parties agreed that Johnston would appear on January 31, 1984. Johnston failed to appear. Appellee then renewed his motion for default judgment.

No reason for Johnston's failure to appear was advanced until after the hearing on appellee's renewed motion for default judgment. After the hearing, a psychiatrist sent a letter to the district court describing his observations of Johnston based on two sessions with him, the first of which was in February 1984. The psychiatrist offered two possible explanations for Johnston's failure to appear at the January 31 deposition: (1) his poor judgment in matters of a serious nature; and (2) his grandiose delusional system that made him feel invulnerable. The district court thereafter entered a default judgment against Johnston, concluding that

> [t]here is no showing that Johnston was suffering from any physical or psychological malady that would have prevented him from attending the second deposition and responding to questions in a coherent and rational fashion. At best,

2. *See* n. 1, *supra*.

[the psychiatrist's] letter is a **post hoc** explanation of **possible** motives for Johnston's failure to attend the deposition.

The district court did not abuse its discretion in entering a default judgment against Johnston. The judge was careful to explain the gravity of Johnston's failure to comply with the first deposition notice. Johnston was given another opportunity to comply. He failed to do so. The district court's grant of default against defendant Johnston is affirmed.

## CONCLUSION

Under the facts of this case, we conclude that ORS § 59.115 does not provide for equitable defenses. Nor are tax benefits deducted from damage awards under that section. The district court did not abuse its discretion by granting Hall's default motion.

**AFFIRMED.**