SECURITIES AND EXCHANGE
COMMISSION, Plaintiff,

v.

Giuseppe B. TOME, Paolo Mario Leati, Lombardfin S.p.A., Trasatlantic Financial Co., S.A., Nayarit Investments, S.A., Finvest Underwriters and Dealers Corp., Certain Purchasers of the Common Stock and Call Options for the Common Stock of St. Joe Minerals Corp., and Banca Della Svizzera Italiana, Defendants.

81 Civ. 1836(MP).

United States District Court,
S.D. New York.

July 22, 1986.

MEMORANDUM
ACCOMPANYING JUDGMENT

MILTON POLLACK, Senior District Judge.

*Prejudgment Interest*

The Findings and Opinion in this case, filed June 3, 1986, stated that prejudgment interest on the amounts subject to disgorgement in this civil insider trading action brought by the SEC, was to be calculated at the average prime rate for the period from March 11, 1986, the day after the unlawful purchase of St. Joe securities based on inside information, through the date of the Findings and Opinion. This amount turned out to be approximately 13% per annum. On further consideration, after hearing arguments of counsel, this Court amends the prior Opinion to rule that prejudgment interest shall be included in the judgment at the rate of 9% per annum

for the period from March 11, 1986, through July 22, 1986, the date of the entry of final judgment. This 9% shall be included on all of the unlawful St. Joe trades discussed in the Opinion; the main defendant, Tome, is liable for prejudgment interest both on trades in which he had a beneficial interest and, jointly and severally with his tippees, on trades in which he tipped others to trade but in which the SEC did not demonstrate that he had a beneficial interest.

■ "An award of pre-judgment interest in a case involving violations of the federal securities laws rests within the equitable discretion of the district court to be exercised according to considerations of fairness." *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 516 F.2d 172, 191 (2d Cir.1975) (involving Section 14(e) of the Securities Exchange Act of 1934), *rev'd on other grounds*, 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977). *Accord Blau v. Lehman*, 368 U.S. 403, 414, 82 S.Ct. 451, 457, 7 L.Ed.2d 403 (1962) (involving insider's "short swing" profits under § 16(b) of the Securities Exchange Act of 1934); *Woods v. Barnett Bank of Fort Lauderdale*, 765 F.2d 1004, 1014 (11th Cir.1985) (violation of Rule 10b–5); *Huddleston v. Herman & MacLean*, 640 F.2d 534, 560 (5th Cir.1981) (violation of Rule 10b–5), *aff'd in part, rev'd in part on other grounds*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983); *Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 173 n. 30 (2d Cir.1980) (violation of Rule 10b–5); *Wessel v. Buhler*, 437 F.2d 279, 284 (9th Cir.1971) (violation of Rule 10b–5).

■ Tome contends that it would be inequitable (and therefore an unlawful "penalty" in a disgorgement proceeding) to compel him to pay prejudgment interest on profits from his tippees' transactions since he did not have a beneficial or discretionary interest in those transactions. He contends that he should not have to pay prejudgment interest on money that he never received and for which he is liable only derivatively or vicariously.[1] In a Rule 10b–5 case, however, the Second Circuit has held that "the fact that the defendants were not unjustly enriched does not, standing alone, make it inequitable to compel them to pay interest." *Rolf v. Blyth, Eastman Dillon & Co.*, 637 F.2d 77, 87 (2d Cir.1980).

In another insider trading case, another defendant put forth the argument Tome now asserts, claiming that its liability in damages for tippee trading should be limited because it did not benefit financially from the tippees' transactions. *Elkind v. Liggett & Myers, Inc.*, 472 F.Supp. 123, 134 (S.D.N.Y.1978), *aff'd in relevant part*, 635 F.2d 156 (2d Cir.1980).[2] In rejecting this argument and imposing liability on the defendant both for damages and for prejudgment interest based on its tippees' transactions, the district court noted that the defendant "acted in order to obtain other benefits[,]" *i.e.*, to foster goodwill between it and the financial analysts it tipped. *Id.* The Second Circuit affirmed the district court's finding of liability against the defendant based on its tippees' trades, specifi-

---

**1.** The Supreme Court has held that the tipper's conduct, almost invariably, is more culpable than that of the tippee. *Bateman Eichler, Hill Richards, Inc. v. Berner*, —— U.S. ——, 105 S.Ct. 2622, 2630–31, 86 L.Ed.2d 215 (1985). Moreover, a tipper's liability is independent, not derivative, of the tippee's. *SEC v. Tome*, 81 Civ. 1836, slip op. at 58–59 n. 40 (S.D.N.Y. June 3, 1986). But if the tippee can be held liable as well, the tipper's liability is joint and several with that of his tippee. *Bateman*, 105 S.Ct. at 2630; *Elkind*, 635 F.2d at 169. A tippee, however, *cannot* be held liable unless the tipper is also liable. *Dirks v. SEC*, 463 U.S. 646, 662, 103 S.Ct. 3255, 3265, 77 L.Ed.2d 911 (1983). Given these propositions, it is illogical to argue, as Tome does, that a tippee's liability can be *greater* than that of the tipper, *i.e.*, that, as to the tippee's trades, the tippee can be held liable for prejudgment interest but that the tipper cannot.

**2.** In this case, however, there is evidence that Tome did benefit financially from the tippee transactions. Tome was to be paid $200,000 for the tip to Leati, a tip that Tome *intended* Leati use for the benefit of Leati's firm's, Lombardfin S.p.A.'s, customers. As to Tome's other tippees, he had a brokerage relationship with them and certainly expected to benefit financially through increased business from these clients in other transactions.

cally noting that "[t]he district court acted well within its discretion in awarding prejudgment interest ..." on those transactions. *Elkind,* 635 F.2d at 169, 173 n. 30.

■ An award of prejudgment interest "is, in the first instance, compensatory[,]" but this "compensatory principle must be tempered by an assessment of the equities." *Norte & Co. v. Huffines,* 416 F.2d 1189, 1191 (2d Cir.1969), *cert. denied sub nom., Muscat v. Norte & Co.,* 397 U.S. 989, 90 S.Ct. 1121, 25 L.Ed.2d 396 (1970). In this case, Tome willfully violated the securities laws and thereafter attempted, through lies and deceit, to cover-up his role in the illegal activity; he has remained outside the United States to avoid prosecution on related criminal charges. In short, the equities do not weigh in his favor. *See id.* ("personal wrongdoings" of defendant should be considered in evaluating whether an award of prejudgment interest is in accord with "fundamental fairness"); *Wessel,* 437 F.2d at 284 (remanding to district court for determination of prejudgment interest in a Rule 10b–5 case because of defendant's "flagrant use of false statements.").

■ In setting an appropriate prejudgment interest rate, this Court notes that the average prime rate during this period of time has been almost 13% per annum. Approximating what the return on a relatively safe investment during this time would have been, this Court sets the prejudgment interest rate at 9% per annum. *See Western Federal Corp. v. Davis,* 553 F.Supp. 818, 821 (D.Ariz.1982) (for a violation of Section 12 of the Securities Act of 1933, using a prejudgment interest rate of 14.25%, which was the consumer money market rate, as a benchmark, and adjusting downwards depending on the degree to which plaintiffs lost the use of their money), *aff'd sub nom., Western Federal Corp. v. Erickson,* 739 F.2d 1439 (9th Cir. 1984).

So Ordered.