**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**GREAT LAKES EQUITIES CO., G. Reynolds Sims, Eric R. Bryen and Lawrence M. Kowal, Defendants.**

**No. 89–CV–70601–DT.**

United States District Court, E.D. Michigan, S.D.

Sept. 24, 1991.

</div>

Gregory von Schaumburg and Donald G. Andrews, S.E.C., Chicago, Ill., for plaintiff.

Christopher Andreoff, Evans & Luptak, Detroit, Mich., for defendants.

FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING 17 JUNE 1991 DISGORGEMENT HEARING

GADOLA, District Judge.

On September 4, 1990, this court entered an order and judgment [1] in the above-refer-

---

**1.** *Securities and Exchange Commission v. Great Lakes Equities Co., et al.,* [current volume] Fed. Sec.L.Rep. (CCH) 95,685 at 98,203, 1990 WL

enced proceeding. That order held that disgorgement was appropriate and ordered an evidentiary hearing be held to determine the appropriate amount. The evidentiary hearing was held on June 17, 1991.

During the course of the trial and at all times during the course of this litigation, defendants Sims and GLE either have been represented by counsel or have at times represented themselves. Defendant Kowal appeared *pro se* at the evidentiary hearing regarding the appropriate amount of disgorgement.

Having considered the record herein, the briefs submitted by the parties, the evidence presented at trial and the arguments of counsel, the court makes the following findings of fact and conclusions of law.[2]

260587 (E.D.Mich. September 4, 1990) (hereinafter referred to as Order at _____).

**2.** The following format will be used in the citation to the record. Citations to the transcripts from the preliminary hearing will reference the witness, volume and page, e.g. Bryen PT V5 p 79; citations to the transcripts from the hearing on the merits will be referenced similarly, e.g. Sims TT V1 p 30; exhibits will be referenced to their number or letter and, if appropriate, page, paragraph or sentence, e.g. Ex 31 p 2 3 sen 1; citations to the stipulations entered into between the parties in the *Joint Final Pretrial Order* will reference the number, e.g. Stip 2; citations to a deposition will reference the witness, the exhibit number, if any, and the page, e.g. Burgess Dep Ex 109 p 20.

The following findings of fact and conclusions of law are adopted with some minor redactions from plaintiff's proposed findings of fact and conclusions of law filed with this court.

**3.** Order at 98,203.

**4.** *Id.*

**5.** Exhibit 70A–B, Bates stamp 000148 (Arthur Andersen & Co. workpapers from the audit of GLE for the year end September 30, 1988); *see also* Exhibit 7, Bates stamp 00380 (Arthur Andersen & Co. workpapers from the audit of GLE for the year end September 30, 1989).

**6.** It is clear from the evidence in the record that all decisions of any import at GLE were either made by defendant Sims or cleared by him prior to implementation. For example, defendant Sims was primarily, among other things, involved in the investment banking relationship

## I.

### Findings of Fact

1. G. Reynolds Sims is the founder and sole shareholder of Great Lakes Equities, Co.[3] Defendant Sims is also the President of GLE,[4] its only director,[5] and principal decision maker.[6]

2. From at least 1988 through 1989, GLE was an illiquid,[7] under-capitalized company[8] which was operating on essentially a break-even basis in 1988 and at a significant loss in 1989.

3. Moreover, GLE's internal controls were unreliable.[9] Its books were kept on a cash basis[10] and were in such disarray that GLE's auditor had to employ substantive

with GAT, *see* Order at 98,207; was principally involved in jointly producing the video with GAT, Order at 98,207–98,208; prepared press releases and sales materials; and dealt with the principals of GAT, MSE and Contach, Order *passim.* Similarly, defendant Sims reviewed all order tickets, and approved *most of them, prior* to their entry. *See* Exhibit 70A–B, Bates stamp 000040.

**7.** Exhibit 70A–B, Bates stamp 00025 P. 2, 000031 P. 6 and 000075 and plaintiff's exhibit 7, Bates stamp 00036.

**8.** The trial record contains examples of defendant Sims' attempts at capital infusion. *See* Reiger testimony TT V XXIV P. 60

(year end 1989 Sims contributed $173,000), Exhibit 70A–B, Bates stamp 000024, P. 2. Despite these attempts at capital infusion, this court, in its order, found that GLE was not in compliance with the net capital provisions at various times during the time period alleged in plaintiff's complaint.

**9.** *See* Reiger testimony TT V XXXIV pp. 23–24, p. 27 (accruals not being made); p. 32 (books in poor shape); pp. 35–36 (GLE had "kind of" a general ledger); and p. 39 (substantive testing employed); *see also* Exhibit 7, Bates stamp 000075 (books kept on a cash basis), Exhibit 70A–B, Bates stamp 000012 and 000024 and plaintiff's Exhibit 7, *see generally* Bates stamp 00010, 00032, 00036, 00038 and 00039.

**10.** Exhibit 70A–B, Bates stamp 000024 and 000075. The accruals from audits since 1986 had not been recorded. Exhibit 70A–B, Bates stamp 000024; *see also* Exhibit 7, Bates stamp 00039.

testing in their audit.[11]

4. Also, as proven at the trial on the merits, defendant Sims used GLE to defraud investors of GAT, MSE and Contach out of hundreds of thousands of dollars, for which he and GLE were found guilty of violating the federal securities laws and enjoined from further violations.

5. From at least 1988 through 1989, defendant Sims caused Sims and Kaplan to pay expenses of GLE. For example, salaries and withholding taxes of employees of GLE, with the exception of the registered representatives, were paid by Sims & Kaplan.[12]

6. Similarly, Sims & Kaplan paid at least $19,500 of GLE's 1988 audit fees[13] and a portion of GLE's telephone expenses.[14]

7. Moreover, a check made out to GLE was deposited into the bank account of Sims & Kaplan,[15] and GLE sublet Eric Bryen's apartment.[16] Finally, hundreds of thousands of dollars were paid by GLE to Sims & Kaplan between 1988 and 1989.[17]

8. From the evidence presented at the lengthy trial on the merits as well as from the evidence presented at this hearing on disgorgement, and being otherwise familiar in the premises, the court finds that defendant Sims dominated and controlled the activities of GLE so completely that the corporation had no separate mind, will, or existence of its own.

9. From the evidence presented at the lengthy trial on the merits as well as from the evidence presented at this hearing on disgorgement, and being otherwise familiar in the premises, the court finds that defendant Sims used his domination and control over GLE to commit fraud and that the fraud resulted from Sims domination and control.

10. In view of the foregoing paragraphs 1–9, defendant Sims is the alter-ego of Great Lakes Equities Co.

11. Moreover, in view of the foregoing paragraphs 1–9, defendant Sims' activities and those of Great Lakes Equities Co. are inextricably linked.

12. Defendants Sims and Great Lakes Equities Co. are jointly and severally liable for payment of $609,589.10 in disgorgement and prejudgment interest.[18]

13. Defendant Lawrence M. Kowal is liable for payment of $28,335.85 in disgorgement and prejudgment interest.[19]

## II.

### CONCLUSIONS OF LAW

█ 1. Defendant Sims is the alter ego of Great Lakes Equities Co. *Bucyrus–Erie Co. v. General Products*, 643 F.2d 413, 418 (6th Cir.1981) (If a party dominates and controls a corporation and uses the domination and control to commit fraud, the party is an alter ego of the corporation.); *Laborers' Pension Trust Fund v. Weinberger Homes, Inc.*, 872 F.2d 702 (6th Cir.1988); *see also William L. Comer Family Equity Trust v. U.S.*, 732 F.Supp. 755 (E.D.Mich. 1990).

2. Moreover, the activities of defendants Sims and Great Lakes Equities Co. are inextricably linked. *Securities and Exchange Commission v. R.J. Allen & Associates, Inc.*, 386 F.Supp. 866, 881 (S.D.Fla.1974).

---

**11.** Exhibit 70A–B, Bates stamp 000012; *see also* Reiger testimony TT V XXIV p. 39; *see also* Exhibit 7, Bates stamp 00032, 00036 and 00039.

**12.** *See* Exhibit 70A–B, Bates stamp 000167–000168; *see also* Exhibit 7, Bates stamp 00248–00251.

**13.** Exhibit 11. (Sims admissions check number 4345); *see also* plaintiff Exhibit 7, Bates stamp 00108 and 00352. Sims & Kaplan also paid $3,000 for the compilation prepared for defendant GLE by Cohen, Aramson & Levitt. *See* Exhibit 7, Bates stamp 00464.

**14.** Exhibit 12. (Sims admission check numbers 4349, 4297 and 4251).

**15.** Exhibit 12. (Sims admission, Hamilton Miller ... Travel Corporation check number 24234).

**16.** Exhibit 70A–B, Bates stamp 000141.

**17.** Defendants' Exhibits 000 and D.

**18.** *See* plaintiff's Exhibits 1–4.

**19.** *See* plaintiff's Exhibits 5 and 6.

3. When addressing the amount of money that a defendant must disgorge, the Sixth Circuit has held, by implication,[20] that the entire amount of profits which were illicitly received must be disgorged.[21] *See Securities and Exchange Commission v. Blavin,* 760 F.2d 706, 710 (6th Cir.1985), *aff'g* 557 F.Supp. 1304 (E.D.Mich.1983); *see also Securities and Exchange Commission v. Washington County Utility District,* 676 F.2d 218, 227 (6th Cir.1982).

■ 4. Defendant Sims is GLE's alter ego. His actions are inextricably interwoven with those of GLE. Under these circumstances, joint and several liability is appropriate. *Securities & Exchange Commission v. R.J. Allen & Associates, Inc.,* 386 F.Supp. 866, 881 (S.D.Fla.1974); *accord Securities and Exchange Commission v. World Gambling Corp.,* 555 F.Supp. 930, 931 (S.D.N.Y.1983); *see also Securities and Exchange Commission v. Novaferon Labs, Inc., et al.,* 90 CV 1446 (N.D.Ohio December 14, 1990).

5. Moreover, all doubts concerning the determination of disgorgements "are to be resolved against the defrauding party." *Securities and Exchange Commission v. First City Financial, Ltd.,* 688 F.Supp. 705, 727 (D.D.C.1988), *aff'd,* 890 F.2d 1215 (D.C.Cir.1989) (*citing Securities and Exchange Commission v. MacDonald,* 699 F.2d 47, 55 (1st Cir.1983)).

■ 6. The deductions for overhead, commissions and other expenses are not warranted. The manner in which defendants Sims and Great Lakes Equities Co. chose to spend their misappropriation is irrelevant as to their objection to disgorgement. *See Securities and Exchange Commission v. Benson,* 657 F.Supp. 1122, 1127 (S.D.N.Y.1987); *see also Securities and Exchange Commission v. Dimensional Entertainment Corporation,* 493 F.Supp. 1270, 1283 (S.D.N.Y.1980).

7. The defendants in this case misinterpret the terms "profit or benefit" as they are used in cases ordering disgorgement:

"[The defendant's] construction would permit the perpetrator of a successful scheme, who was just as successful at dissipating the ill-gotten gains, to avoid a disgorgement order because at the time of the order, [it] had retained none of the proceeds from the scheme. To state the proposition is to discount he [sic] efficacy of it." *Securities and Exchange Commission v. Jet Travel Services, Inc.,* (CCH) Fed.Sec.L.Rep. [1975–76 Transfer Binder], 95, 317 at 98,609 (M.D.Fla. Aug. 29, 1975).

The benefit or unjust enrichment of a defendant includes not only what it gets to keep in its pocket after the fraud, but also the value of the other benefits the wrongdoer receives through the scheme. Thus, in insider trading cases, a *tipper* must disgorge not only his own profits but also any profits made by his tippees, even if the tipper did not receive any tangible kickback from those tippees. *Securities and Exchange Commission v. Texas Gulf Sulphur,* 446 F.2d 1301, 1307–08 (2d Cir.1971), *cert. denied,* 404 U.S. 1005, 92 S.Ct. 561, 30 L.Ed.2d 558 (1971); *Securities and Exchange Commission v. Tome,* 638 F.Supp. 638, 639 (S.D.N.Y.1986) *aff'd,* 833 F.2d 1086 (2nd Cir.1987) *cert. denied,* 486 U.S. 1014,

---

**20.** *Blavin* does not explicitly hold that no deductions may be taken for expenses; the issue of expenses is never directly addressed. In *Blavin,* however, there is no deduction taken for expenses. Moreover, it is clear that it is within the district courts' equitable discretion to disallow expenses incurred in perpetration of the fraud even if there were Sixth Circuit authority for the proposition that expenses may be deducted from disgorgement.

**21.** Defendants misconstrue plaintiff's burden of proof in the disgorgement context and the amount of specificity required. Plaintiff is not required to trace every dollar of proceeds misappropriated by the defendants Sims and GLE, nor is plaintiff required to identify misappropriated monies which have been commingled by them. All plaintiff is required to show is that the amount of disgorgement is a "... reasonabl[e] approximation of profits causally connected to the violation ..." *Securities and Exchange Commission v. First City Financial Corp., Ltd.,* 890 F.2d 1215, 1231 (D.C.Cir.1989). Once, as here, plaintiff has proven that, the burden of proof shifts. *Id.* at 1232. Indeed, since calculating disgorgement may at times be a near-impossible task, the risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty. *First City Financial Corp., Ltd.* at 1232.

108 S.Ct. 1751, 100 L.Ed.2d 213 (1988). *Securities and Exchange Commission v. Clark, Civ. No. C87–7112 (W.D.Wash. May 16, 1989)*, appeal pending. *See also Dirks v. Securities and Exchange Commission*, 463 U.S. 646, 664, 103 S.Ct. 3255, 3266, 77 L.Ed.2d 911 (1983). The benefit to the tipper is inferred. Similarly, in this case, the benefit defendants Sims and GLE received from the various payments can also be inferred. Moreover, the specific categories of expenses which are proffered by the defendants are not deductible.

For example, where the expenditures are to defray obligations of the wrongdoer, the wrongdoer is benefited by those expenditures. Thus, for example, even under defendants' theory, there is no basis for deducting the costs of fixed expenses since those expenses would be incurred whether or not the fraud took place. By allowing a deduction for fixed expenses, part of the proceeds of the fraud is being used to defer costs that defendants Sims and GLE had to pay in any event, and they would be unjustly enriched by those payments. Clearly, defendants Sims and GLE should not be allowed to profit by their fraud. Moreover, a substantial portion of those fixed costs consists of rent payments into the pockets of the law firm of Sims & Kaplan, an entity controlled by defendant Sims. In addition, substantial sums were paid to defendant Sims personally.

Similarly, where the expenditures are made to maintain a valuable asset of defendants Sims and GLE, they have benefitted from those expenditures, and the amount of those expenditures is not a proper deduction from the amount of unjust enrichment.

Finally, as discussed *infra*, the Commission is required to prove *only* an amount of disgorgement reasonably approximate of the benefits or profits causally connected to the violation. *First City Financial Corp., Ltd.*, 890 F.2d at 1231.[22] Further, in Commission cases where the amount of unjust enrichment cannot be precisely determined, the Commission, and not the defendants, is entitled to the benefit of the doubt. *First City Financial Corp., Ltd.*, 890 F.2d at 1232.

Accordingly, judgment shall enter for plaintiff and against defendants Sims and Great Lakes Equities Co., jointly and severally, for payment of $609,589.10 in disgorgement and prejudgment interest and against defendant Lawrence M. Kowal for payment of $28,335.85 in disgorgement and prejudgment interest.

22. The case law cited by the defendants is neither binding precedent, nor persuasive. First the defendants' cases are not precedent because none of them are from the Sixth Circuit or Supreme Court. Conversely, plaintiff has cited *two* Sixth Circuit cases regarding disgorgement.

Secondly, the defendants' cases are not persuasive. With the exception of *Securities and Exchange Commission v. Thomas James, Inc.*, 738 F.Supp. 88 (W.D.N.Y.1990), none of the defendants' cases involve the Securities and Exchange Commission. Yet both *First City Financial Corp.*, 890 F.2d at 1232–33 n. 24, and *Litton Industries, Inc. v. Lehman Brothers Kuhn Loeb Inc.*, 734 F.Supp. 1071, 1076 n. 3 (S.D.N.Y.), recognize that the standard to be applied differs when the commission appears, as here, as "... the statutory guardian charged with safeguarding the public interest in enforcing the securities laws ..." *Id.*

In *Estate of Pidcock v. Sunnyland America*, 726 F.Supp. 1322 (S.D.Ga.1989), the district court *denied* deductions of any expenses or costs. In fact, the Eleventh Circuit stated that, contrary to allowing deductions, "... [i]t is more appropriate to give the defrauded party the benefit of even wind-falls than to let the fraudulent party keep them ..." *Pidcock v. Sunnyland America*, 854 F.2d 443, 446 (11th Cir. 1988) (citations omitted).

Finally, with regard to *Securities and Exchange Commission v. Thomas James*, the district court clearly equated disgorgement with restitution, 738 F.Supp. 88, 94 (W.D.N.Y.1990). The Sixth Circuit in *Blavin* rejected the defendant's argument that disgorgement was a type of restitution that should be based on investor losses. Instead, the Sixth Circuit stated that once the Commission has established that a defendant has violated the securities laws, the Court possesses the equitable power to grant disgorgement of a sum of money equal to all other "illegal payments received." 760 F.2d at 713.