USCA1 Opinion

 

United States Court of Appeals

For the First Circuit

No. 02-1672

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff, Appellant,

v.

MICHAEL G. SARGENT and DENNIS J. SHEPARD,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Torruella, Circuit Judge,

Stahl, Senior Circuit Judge,

and Howard, Circuit Judge.

 Eric Summergrad, Deputy Solicitor, with whom Giovanni P.
Prezioso, General Counsel, Meyer Eisenberg, Deputy General Counsel, 
and Michael A. Conley, Attorney Fellow, were on brief, for
appellant.

 Matthew C. Donahue, with whom Eno, Boulay, Martin & Donahue,
LLP, was on brief, for appellee Dennis J. Shepard.

 Gary C. Crossen, with whom Rubin and Rudman LLP, was on brief,
for appellee Michael G. Sargent.

May 15, 2003

 TORRUELLA, Circuit Judge. Defendant-appellee Dennis J.
Shepard illegally shared confidential information regarding an
upcoming tender offer with defendant-appellee Michael G. Sargent,
who profited by using the information to trade in the target's
stock. Sargent recommended the target's stock to co-defendant
Robert Scharn, who also realized profits on the trades. In a civil
enforcement action brought by plaintiff-appellant Securities and
Exchange Commission ("SEC") against Shepard and Sargent, a jury
found the defendants liable for violating Section 14(e) of the
Securities Exchange Act, 15 U.S.C. 78n(e), and Rule 14e-3
thereunder, 17 C.F.R. 240.14e-3 (2003). As a remedy, the district
court disgorged the defendants of the illicit profits. The SEC
appeals the district court's denial of injunctive relief,
prejudgment interest, and civil penalties. After careful review,
we affirm.

I. Facts

 In 1994, Purolator Products, a publicly held manufacturer
of automotive parts, was the target of acquisition efforts by Mark
IV Industries, Incorporated. Defendant Shepard and J. Anthony
Aldrich (against whom the Commission did not file a complaint) were
the sole shareholders of a consulting firm. Aldrich, a member of
the board of directors for the target, had nonpublic information
that Purolator and Mark IV were involved in negotiations regarding
Mark IV's acquisition proposal. In July 1994, Aldrich shared the
information with Shepard. Shepard agreed not to disclose the
information and indicated that he understood his obligation to
maintain its confidentiality.

 On Saturday, September 10, 1994, Shepard told Sargent,
his friend and dentist, that Aldrich was on the Purolator board and
he stated, "I am aware of a company right now that is probably
going to be bought," but "even if I had the money I can't buy stock
in this company because I am too close to the situation." The
following Monday, Sargent contacted his broker and asked him to do
some research on Purolator. Sargent thereafter purchased a total
of 20,400 shares of Purolator. Sargent also notified his close
friend Scharn of his purchases in Purolator. Scharn then purchased
5,000 shares of Purolator. Within a few days of the tender offer
announcement, Sargent sold all of his Purolator stock at a profit
of $141,768. Scharn sold his shares at a profit of $33,100.

 The SEC filed the current action in March 1996, charging
Shepard, Sargent, Scharn, and a fourth defendant with tipping
and/or trading in violation of Exchange Act Section 10(b), Rule
10b-5, Section 14(e), and Rule l4e-3 and seeking injunctive relief,
disgorgement, prejudgment interest, and civil penalties. The
district court granted the defendants' motion for a directed
verdict, holding that there was insufficient evidence that Shepard
tipped Sargent on the evening of September 10, 1994. The SEC
appealed that decision as to Shepard, Sargent, and Scharn (but did
not appeal as to the fourth defendant), and in late 2000 this Court
remanded the case for a new trial in October 2001. SEC v. Sargent,
229 F.3d 68 (1st Cir. 2000). On remand, the jury found Shepard and
Sargent liable for violations of Section 14(e) and Rule 14e-3 but
did not find them liable for violations of Section 10(b) and Rule
10b-5. The jury found Scharn not liable on all counts.

 On March 27, 2002, the district court issued an amended
final judgment ordering Sargent and Shepard jointly and severally
liable for disgorgement of Sargent's and Scharn's trading profits,
a total of $174,868. The court declined to enter an injunction
against future violations. The court also refused to order the
defendants to pay prejudgment interest on the disgorgement amount
and to assess penalties pursuant to the Insider Trading and
Securities Fraud Enforcement Act of 1988 ("ITSFEA"), codified in
Section 21A(a) of the Exchange Act, 15 U.S.C. 78u-1(a). This
appeal of the district court's denial of an injunction, interest,
and penalties followed.

II. Standard of Review

 In an SEC enforcement case, we review the district
court's decision regarding injunctions, prejudgment interest, and
civil penalties for abuse of discretion. Riseman v. Orion
Research, Inc., 749 F.2d 915, 921 (1st Cir. 1984). Under this
rubric, "[a]buse occurs when a material factor deserving
significant weight is ignored, when an improper factor is relied
upon, or when all proper and no improper factors are assessed, but
the court makes a serious mistake in weighing them." Indep. Oil &
Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co., 864
F.2d 927, 929 (1st Cir. 1988). Further, "a district court abuses
its discretion if it incorrectly applies the law to particular
facts." Am. Bd. of Psychiatry & Neurology v. Johnson-Powell, 129
F.3d 1, 3 (1st Cir. 1997).

III. Injunctive Relief

 The SEC argues that the district court relied on an
erroneous legal standard in refusing to grant an injunction against
future violations of securities laws. The agency claims that the
court believed that defendants must pose a "relatively imminent"
threat of recidivism in order to justify permanent injunctive
relief. We disagree, finding instead that the district court
reached the proper conclusion under the correct standard.

 The Securities and Exchange Act permits the SEC to seek
an injunction in federal district court to prevent violations of
securities laws. 15 U.S.C. § 78u(d) (2003). Such an injunction is
appropriate where there is, "at a minimum, proof that a person is
engaged in or is about to engage in a substantive violation of
either one of the Acts or of the regulations promulgated
thereunder." Aaron v. SEC, 446 U.S. 680, 700-01 (1980). This
court has upheld issuance of injunctions in cases where future
violations were likely. See, e.g., SEC v. Fife, 311 F.3d 1, 8-9
(1st Cir. 2002); accord SEC v. Ingoldsby, Civ. A. No. 88-1001-MA,
1990 WL 120731, *8 (D. Mass. May 15, 1990) (issuing an injunction
where there is a "reasonable likelihood" that the defendants will
violate the same law again). The district court, although it did
not provide a detailed basis for its decision, properly articulated
the legal standard for issuance of an injunction as reasonable
likelihood of recidivism, not an imminent threat of it.

 The reasonable likelihood of future violations is
typically assessed by looking at several factors, none of which is
determinative. SEC v. Youmans, 729 F.2d 413, 415 (6th Cir. 1984). 
Courts consider, among other things, the nature of the violation,
including its egregiousness and its isolated or repeated nature, as
well as whether the defendants will, owing to their occupation, be
in a position to violate again. Id.; SEC v. First City Fin. Corp.,
890 F.2d 1215, 1228 (D.C. Cir. 1989); SEC v. Universal Major Indus.
Corp., 546 F.2d 1044, 1048 (2d Cir. 1976). The courts also take
into account whether the defendants have recognized the
wrongfulness of their conduct. SEC v. Manor Nursing Ctrs., 458
F.2d 1082, 1100-01 (2d Cir. 1972).

 Under these factors, the district court acted within its
discretion in denying an injunction with respect to Shepard. 
Shepard disclosed confidential information to Sargent, but this was
a first-time violation. Cf. Ingoldsby, 1990 WL at *5 (indicating
that even a "past violation by the defendant does not demonstrate
a realistic likelihood of recurrence"). As the SEC admits,
Shepard's violation was not an egregious one, particularly where he
neither traded on the information himself nor derived any direct
personal profit. See, e.g., SEC v. Sayegh, 906 F. Supp. 939, 948
(S.D.N.Y. 1995), aff'd sub nom. SEC v. Militano, 101 F.3d 685 (2d
Cir. 1996) (finding conduct egregious where defendant "accomplished
the manipulation by buying and having other market makers buy"
shares); SEC v. Lorin, 877 F. Supp. 192, 201 (S.D.N.Y. 1995),
vacated in part on other grounds by 76 F.3d 458 (2d Cir. 1996)
(finding defendant acted egregiously where, "breaching his
fiduciary duties to his customers pursuant to the Agreement, [he]
caused his customers' accounts at E.F. Hutton to have a negative
net worth of $1.8 million by November 1987, just after the collapse
of the scheme"). Further, his current position as president of a
web-casting company does not put him in a position where future
violations are likely. Cf. SEC v. Shapiro, 494 F.2d 1301, 1308
(2d Cir. 1974) (affirming grant of injunction where defendant's
"regular business as a 'corporate marriage broker'" will likely
expose him to "many temptations in the future."). We therefore
affirm the denial of an injunction against Shepard.

 With respect to Sargent, there was also no abuse of
discretion on the part of the district court in denying an
injunction. Sargent's violation was isolated and unsophisticated:
he simply put two and two together and, based on a casual
conversation, invested in one company without attempting to conceal
his trades. Sargent is unlikely to be privy to insider information
either through his occupation as a dentist or because of his wife's
position as a consultant. Further, Sargent's acceptance of the
jury verdict without further appeal is sufficient acknowledgment of
the wrongfulness of his conduct. The district court's denial of an
injunction against Sargent is affirmed.

IV. Prejudgment Interest

 The SEC argues that, although the lower court correctly
held Sargent and Shepard jointly and severally liable for
disgorgement, it erred in refusing to assess interest covering the
prejudgment period. "Prejudgment interest, like disgorgement,
prevents a defendant from profiting from his securities
violations." SEC v. O'Hagan, 901 F. Supp. 1461, 1473 (D. Minn.
1995), reversed on other grounds United States v. O'Hagan, 521 U.S.
642 (1997). Courts have recognized that an assessment of
prejudgment interest, like the disgorgement remedy, "is intended to
deprive wrongdoers of profits they illegally obtained by violating
the securities laws." SEC v. Grossman, No. 87 Civ. 1031, 1997 WL
231167, *11 (S.D.N.Y. May 6, 1997), aff'd in relevant part SEC v.
Hirshberg, 173 F.3d 846 (2d Cir. 1999).

 "The decision whether to grant prejudgment interest [is]
confided to the district court's broad discretion, and will not be
overturned on appeal absent an abuse of that discretion." Endico
Potatoes, Inc. v. CIT Group/Factoring, Inc., 67 F.3d 1063, 1071-72
(2d Cir. 1995). An award of prejudgment interest is based on
consideration of a variety of factors, including "the remedial
purpose of the statute [involved], the goal of depriving culpable
defendants of their unlawful gains, and . . . unfairness to
defendants." SEC v. First Jersey Securities, 101 F.3d 1450, 1477
(2d Cir. 1996). On appeal, a denial of prejudgment interest will
only be reversed if it "was either so unfair or so inequitable as
to require us to upset it." Blau v. Lehman, 368 U.S. 403, 414
(1962). In Riseman, this Court held that

 [a]mong the factors to be considered in
weighing the equities are the willfulness of
the insider's violation, the type and degree
of the insider's inadvertence, the position of
the insider in the corporation, the length of
time between the purchase and the repayment,
and other circumstances of the case. Bad
faith need not be shown.

749 F.2d at 921.

 In this case, the balance of the equities weighs in
Shepard's favor and counsels against awarding prejudgment interest. 
Shepard, who was not an insider at Purolator, divulged inside
information to Sargent on one isolated occasion, and did not
himself execute any trades based on the information. He neither
profited directly from trading nor did he have access to Sargent's
or Scharn's ill-gotten profits during the extended proceedings in
this case. While "the fact that [he was] not unjustly enriched
does not, standing alone, make it inequitable to compel [him] to
pay interest," it does suffice to find a denial of interest
equitable. Rolf v. Blyth, Eastman Dillon & Co., 637 F.2d 77, 87
(2d Cir. 1980); but see SEC v. Rubin, No. 91 Civ. 6531, 1993 WL
405428 (S.D.N.Y. Oct. 8, 1993) (declining to impose prejudgment
interest on tipper who did not trade or profit from trading on
inside information because such interest would constitute an unjust
penalty). Given the circumstances of this case, we find that the
district court acted within its discretion in refusing to award
prejudgment interest with respect to Shepard.

 We find it less obvious that the equities favored denial
of prejudgment interest in Sargent's case, but we affirm the
decision. Although we might have reached a different result had we
been the trial judge, we cannot say that it constituted an abuse of
discretion not to award prejudgment interest on Sargent's trading
profits. Sargent profited from his illegal trades in 1994 and did
not have to disgorge the profits until 2002, thus he essentially
received an eight-year, interest-free loan of those profits, in the
amount of $114,093. See, e.g., SEC v. Moran, 944 F. Supp. 286, 295
(S.D.N.Y. 1996) ("Requiring payment of interest prevents a
defendant from obtaining the benefit of what amounts to an interest
free loan procured as a result of illegal activity."). Here, the
jury found that Sargent acted with scienter, his conduct was not
inadvertent, and he had the use of the money for a substantial
period of time. However, neither the parties' briefs nor our own
research revealed a rule requiring award of prejudgment interest in
situations such as this one. (1) Although we may disagree with the
district court as to which way the equities tip, our hands are tied
by the standard of review. We thus affirm the district court's
denial of prejudgment interest for both Shepard and Sargent.

V. Civil Penalties

 Finally, the SEC seeks reversal of the denial of
Congressionally-provided civil penalties, which can amount to a
maximum of three times the illicit profits realized (or losses
avoided), and are intended to "penalize [the] defendant for . . .
illegal conduct." See H.R. Rep. No. 98-355, at 7 (1983). (2) In
evaluating whether or not to assess civil penalties, a court may
take seven factors into account, such as: (1) the egregiousness of
the violations; (2) the isolated or repeated nature of the
violations; (3) the defendant's financial worth; (4) whether the
defendant concealed his trading; (5) what other penalties arise as
the result of the defendant's conduct; and (6) whether the 
defendant is employed in the securities industry. See SEC v. Yun,
148 F. Supp. 2d 1287, 1295 (M.D. Fla. 2001); SEC v. Falbo, 14 F.
Supp. 2d 508, 528-29 (S.D.N.Y. 1998).

 Applying these factors, we find no reason to reverse the
district court with regard to civil penalties for Shepard. 
Shepard's violations consisted of a one-time tip to Sargent, and,
as stated above, he did not personally realize any trades or direct
profit. He, therefore, is left $174,868 worse off than he was
prior to the activity for which he is liable. (3) Further, he is not
directly involved in the securities business, and he cooperated
with and responded honestly to authorities. Finally, Shepard's
financial net worth is not so high as to require civil penalties. (4)

 Applying the Yun factors to Sargent, we also find that
the district court acted within its discretion in refusing to
assess civil penalties. Sargent was an outsider who made no
efforts to conceal his isolated transaction, which involved trading
in the same stock during a short period of time and, as discussed
in part III above, was not an egregious violation of securities
laws. He is not employed in the securities industry. While he may
have a high net worth, (5) that factor alone does not merit reversal
of the district court's denial of civil penalties. Further,
Sargent was criminally convicted for his actions, and the sanction
imposed in the criminal case -- a year's probation and a $5,000
fine -- also tempers the need for an additional monetary penalty. (6)

VI. Conclusion

 The judgment of the district court is affirmed with
respect to the denial of an injunction, denial of prejudgment
interest, and denial of civil penalties against Shepard and
Sargent. Costs are assessed against the government.

1. We found no case holding that an award of disgorgement must
always be accompanied by an award of prejudgment interest, although
many courts that order disgorgement "routinely also order payment
of prejudgment interest." O'Hagan, 901 F. Supp. at 1473; see also 
SEC v. Tome, 638 F. Supp. 638, 639 (S.D.N.Y. 1986), aff'd, 833 F.2d
1086 (2d Cir. 1987); SEC v. Blatt, 583 F.2d 1325, 1335 (5th Cir.
1978) (stating that "court's power to order disgorgement extends
. . . to the amount with interest by which the defendant
profited"). Disgorgement and prejudgment interest, while both
aimed at depriving a defendant of ill-gotten gains, are nonetheless
distinct remedies and cases repeatedly analyze them separately,
frequently referring to the broad discretion of district courts to
decide whether to award prejudgment interest. Cf. SEC v.
Stephenson, 732 F. Supp. 438, 439 (S.D.N.Y. 1990) (awarding
prejudgment interest in separate opinion and order and referencing
discretionary nature of the remedy).
2. As Congress explained when it first adopted civil penalties for
insider trading:

 The principal, and often effectively only, remedy
available to the Commission against insider trading is an
injunction against further violations of the securities
laws and disgorgement of illicit profits. Although an
injunction subjects a defendant to possible criminal
contempt proceedings if he violates the law again, the
injunction itself serves only a remedial function and
does not penalize a defendant for the illegal conduct. 
Disgorgement of illegal profits has been criticized as an
insufficient deterrent, because it merely restores a
defendant to his original position without extracting a
real penalty for his illegal behavior. The risk of
incurring such penalties often fails to outweigh the
temptation to convert nonpublic information into enormous
profits.

H.R. Rep. No. 98-355, at 7-8. When Congress reaffirmed and
expanded the penalties in ITSFEA in 1988, it commented: "The
creation of a new civil penalty was intended to go beyond
disgorgement of illegal profits to add the imposition of a
significant fine as a needed deterrent." H.R. Rep. No. 100-910, at
11 (1988).
3. The fact that the entire disgorgement amount that Sargent and
Shepard are jointly and severally liable for might, in theory, be
paid in full by Sargent is irrelevant. It cannot be said with any
certainty that a monetary penalty imposed as a joint and several
penalty will be paid in full by one singular defendant, essentially
rendering the joint and several liability moot.
4. There were no explicit findings below as to Shepard's financial
worth, but a settlement letter sent to the district court judge
contained information regarding his available assets and annual
salary.
5. As with Shepard, the district court had access to information
about Sargent's net worth, but made no explicit findings in this
respect.
6. Sargent would have us view his legal expenses, which totaled
over $245,000 as of December 2001, as an additional mitigating
factor. We refuse to do so because, as a matter of public policy,
legal costs borne by a defendant should not be used to offset any
penalty that would otherwise apply. We do note, however, that
knowledge of high defense costs would, in practical terms, likely
serve as a deterrent to future violations.